THE CITY OF WINTER HAVEN, *et al.,* v. A. M. KLEMM & SON, a Corporation.

181 So. 153.
Opinion Filed April 5, 1938.
Rehearing Denied May 18, 1938.

336

338

340

342

344

350

352

354

WHITFIELD, P. J.—This suit was brought by a citizen taxpayer, who is the owner, to enjoin municipal taxation of described land. The levies for the years 1930, 1931, 1932, 1933, are apparently for operating expenses and bond payments, and for the year 1936 the levy is apparently to pay municipal bonds that were issued and used for municipal public improvements under Chapters 11299 and 11301,

Acts of 1925, before the municipal authority of the City of Winter Haven over a particular area, including plaintiff's land, was ousted by a judgment in quo warranto proceedings. The prayer is for cancellation of tax levies and for injunction against levies and collection of taxes upon plaintiff's land for the stated purposes.

Illegal taxation of lands may be enjoined. Pickett v. Russell, 42 Fla. 116, 28 So. 764; Tampa Water Works Co. v. Wood, 104 Fla. 306, 139 So. 800; Consolidated Land Co. v. Tyler, 88 Fla. 14, 101 So. 280; State v. City of Avon Park, 108 Fla. 641, 149 So. 409; City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837.

The bill of complaint seeks relief upon the ground that plaintiff's land was never legally within the city limits, and not upon the ground that plaintiff's land has not received and cannot receive any possible benefits from the municipality or from its public improvements, as in City of Sarasota v. Skillin, 130 Fla. 724, 178 So. 837; State v. City of Avon Park, 108 Fla. 641, 149 So. 409.

Counsel for the city in effect argues that the city being a *de jure* municipality, has *de facto* jurisdiction and authority to levy and collect the taxes on plaintiff's land to pay administrative expenses and also to pay municipal bonds issued by the city as authorized under its statutory charter, Chapter 11299, with power to impose the tax, whie Chap ter 11301, Acts of 1925, which added to the city boundaries the area formerly in the Town of Florence Villa and also added another area embracing plaintiff's land, was *prima facie* and presumptively valid and in force in its entirety.

The plaintiff below, appellee here, contends in effect that by reason of the insufficiency of the title to Chapter 11301, Acts of 1925, to cover the *portion* of the statute which adds to the boundaries of the City of Winter Haven the area

theretofore incorporated, that portion of the statute is invalid; that such partial invalidity appears on the face of the statute; that such portion of the statute was void from is enactment because it violated Section 16 of Article III, Constitution; that there can be no *de facto* jurisdiction of the city over such area; that taxation of plaintiff's land in such area violates Sections 3 and 5 of Article IX of the State Constitution. These contentions are not well founded, as will be shown herein. Appellee does not contest the validity of the municipal bonds of the City of Winter Haven.

Statutes and judicial judgments and decrees should be so interpreted and applied as to effectuate the intended purpose that is consistent with applicable provisions of the paramount organic law; and personal and property rights that are intended by the Constitution to be secured to those lawfully claiming them, should be protected and enforced by due course of law, when no applicable express or implied provision of the State or Federal Constitution is thereby violated. For example, when the subject of property rights is lawfully produced or created, and rights that are intended by the Constitution to be secured to those lawfully claiming them, are bona fide duly acquired in the property so produced or created, such rights should by due course of law be protected and enforced, even though there be procedural or other defects, but no violation of controlling organic law, in the creation or acquisition of such rights. See State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672. See also West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361.

But if a command or prohibition of the Constitution is violated in the creation or production of the subjects of property or in the acquisition of interest therein, such interests are not rights that are intended by the Constitution to be secured, and they will not as such be protected or en-

forced in the courts. See State, *ex rel.* Nuveen, v. Greer, 88 Fla. 249, 102 So. 739, 37 A. L. R. 1298.

Chapter 11299, Acts of 1925, established the City of Winter Haven with described boundaries and extensive municipal powers and authority to issue municipal interest bearing negotiable bonds to be sold and the proceeds thereof used for authorized municipal improvement purposes, the interest and principal of the bonds to be paid by necessary annual tax levied upon all the property within the city.

Chapter 11301, Acts of 1925, abolished the adjacent Town of Florence Villa and added its area to that of the City of Winter Haven, together with an additional area including plaintiff's land, not theretofore in any municipality.

After June 2, 1925, the effective date of Chapter 11301, the City of Winter Haven, pursuant to its statutory charter authority, issued municipal interest bearing negotiable bonds for authorized municipal public improvement purposes. The bonds in effect state that all provisions of law were complied with, and pledged the faith and credit of the city for the payment of the bonds. The statute authorized the taxation of all the lands within the city limits to pay the bonds. The bonds were duly validated by decrees of the Circuit Court, a court of general jurisdiction, acting under express statutory authority consistent with the Constitution. No appeals were taken from the validating decrees. The statute made all citizens and taxpayers of the city parties to the validating proceedings. None of them contested the validation or the issue of the bonds, and the decrees of validation became *res adjudicata*. The proceeds of the bonds were used for authorized municipal public improvements, some of the improvements being in the added area which embraces plaintiff's land. Taxes were annually levied upon all the taxable lands in the City of Winter Haven, as de-

scribed by Chapter 11301, including the area embracing plaintiff's land, to pay the interest and principal of the bonds and operating expenses.

On March 7, 1934, after the bonds were validated and sold and the municipal public improvements were made, the City of Winter Haven was by quo warranto judgment ousted from all jurisdiction and authority over the stated added area embracing plaintiff's land. State, *ex rel.*, v. City of Winter Haven, 114 Fla. 199, 154 So. 700.

Thereafter the City of Winter Haven ceased to levy taxes on the area from which the jurisdiction of the city had been ousted by the *quo warranto* judgment. Later in mandamus proceedings brought by bondholders, the United States District Court required the city to continue to appropriately tax the lands covered by the quo warranto judgment for bond payment purposes until the interest and principal of the bonds are paid. Such judgment of the United States District Court was affirmed by the United States Circuit Court of Appeals. City of Winter Haven v. Gillespie, 84 Fed. (2d) 285. Certiorari was denied. Hartridge-Cannon Co., *et al.*, v. Gillespie, *et al.*, 299 U. S. 606, 57 Sup. Ct. 232, 81 L. Ed. 447.

A taxpayer brought this suit in the State Circuit Court to enjoin the city from taxation of his land for the above stated municipal purposes. From adverse interlocutory decrees the city took the appeal in this case.

In City of Winter Haven v. Gillespie, 84 Fed. (2d) 285, above cited, the action was mandamus brought by bondholders against the city to enforce taxation. In this case the suit is by a taxpayer against the city to enjoin taxation. The same basic principles of law are applicable in each case.

The quo warranto judgment of March 7, 1934, operating, not upon land, but upon city authorities, ousted the City of Winter Haven from exercising municipal jurisdic-

tion over the stated added area upon the ground, not that the Legislature had no power to add lands to the city limits, but that such area was not covered by the subject expressed in the title to Chapter 11301, as is required by Section 16, Article III, of the Constitution. As the Legislature *had the power* by statute to incorporate added lands in the city and as the quo warranto judgment could not change the statutory boundaries of the city, and as the city had exercised the *prima facie* valid jurisdiction and authority conferred by the statute, the judgment ousting the city from jurisdiction over a part of the area, did not affect the *de facto* jurisdiction of the city over such added area.

When considered with the title of the Act quoted in the statement, the description of the boundaries of the City of Haven as contained in Chapter 11301, also quoted in the statement filed herewith, does not show *by the face of the statute* that such described boundaries contain land not covered by the title of the Act. Consequently the alleged failure of the title of the Act to express a subject broad enough to include all the lands embraced in the description of boundaries of the City of Winter Haven contained in Chapter 11301, had to be, and was, shown by evidence *aliunde* the statute in the quo warranto proceedings before the judgment of ouster could have been legally rendered. State, *ex rel.* v. City of Winter Haven, 114 Fla. 199, 154 So. 700. See also West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361; State v. Town of Lake Placid, 109 Fla. 419, 147 So. 469; State v. Town of Lake Placid, 117 Fla. 874; 158 So. 497; State v. Town of Lake Placid, 121 Fla. 839, 164 So. 531.

Where a statute establishing, or relating to, the jurisdiction and powers of a municipality, or a part of such statute, violates a command or a prohibition of the Constitution which relates, not merely to the *form* of the exer-

cise of the legislative power in enacting statutes, as does Section 16, Article III, but which relates to the *nature or character of the subject matter of the enactment,* as do Secion 17, Article XII, Section 30, Article III, and Section 7, Article IX; such statute or a severable portion thereof so violating the Constitution, may be adjudicated to be invalid and inoperative *ab initio,* and, as in such cases, the invalidity of the Act or the portion thereof goes to the *power* of the Legislature to enact the law, and not merely to the form of the enactment, no rights or correlative obligations may arise under such invalid statute or invalid portion of the statute. Such invalid statute or part of a statute could not be validated by statute or by judicial decree. See Brown v. City of Lakeland, 61 Fla. 508, 54 So. 716; Monroe v. Reeves, 71 Fla. 612, 71 So. 922; Weinberger v. Bd. Pub. Inst., 93 Fla. 470, 112 So. 253; Nuveen v. City of Quincy, 115 Fla. 510, 156 So. 153, 37 A. L. R. 1298.

But where the Legislature *has power* to extend the authority of a city over the added areas of lands by including them in an existing municipality, and attempts to do so by a *prima facie* and presumptively valid statute, and for some, years the city exercises municipal authority over such lands, but the subject expressed in the title of the Act is later adjudged to be not sufficiently comprehensive to embrace the particular lands, such defect going to the *form* of the statute and not to the *power* of the Legislature to include lands in the municipality, *and because thereof* the city is ousted from jurisdiction and authority over such particular area of lands by quo warranto judgment, the municipal jurisdiction and authority exercised over such lands by virtue of the *prima facie* and presumptively valid statute, may be *de facto* jurisdiction and authority, binding on citizens and taxpayers for the purposes of issuing bonds for

authorized municipal purposes, and levying duly authorized taxes; since, under Section 8, Article VIII of the Constitution, the Legislature has power to incorporate lands, and the lands were intended to be included, though they were not legally included in the city limits, because of the defective title of the Act. In such case, the portion of the statute covering the added area of lands would be *prima facie* and presumptively valid until adjudged to be invalid to confer *de jure* jurisdiction, *because* of the *defective* or *illegal* exercise of the power which the Legislature had, to include lands in the city limits and authority, though the city would have *de facto* jurisdiction over the area because of the exercise of its *prima facie* jurisdiction and authority. But if the Legislature had no power to include lands within the limits and authority of the city, there could be no *de jure* or *de facto* municipal authority of the city over the lands. See State, *ex rel.*, v. Walthall, 124 Fla. 866, 169 So. 522; State, *ex rel.*, v. City of Cedar Keys, 122 Fla. 454, 165 So. 672; Ocean Beach Heights v. Brown-Crummer Inv. Co., 58 Sup. Ct. 385, 82 L. Ed. ___, filed Jan. 17, 1938.

Chapter 11299 authorizes the issue of municipal bonds not to exceed ten per cent. of the value of the taxable property in the city, and requires the levy of taxes upon lands that *are necessary to pay the bonds*. Such levy is made "in pursuance of law" under Section 3, Article IX, of the Constitution; and the statute is sufficiently definite and specific in its limitations as to the issue of bonds and taxation so as not to be an unlawful delegation of legislative power under Section 5, Article IX, of the Constitution. See Roundtree v. State, 102 Fla. 246, 135 So. 888. The taxing power conferred by Chapter 11299 is essentially unlike that conferred in Stewart v. Daytona & N. S. I. District, 94 Fla. 859, 114 So. 545.

In view of the above statements, it is clear that under Chapters 11299 and 11301, Acts of 1925, the City of Winter Haven is a *de jure* municipality; that the city had authority to issue the bonds for the authorized municipal purposes; and, in order to pay the bonds, had and has authority to levy and collect an appropriate tax upon all the land that was *prima facie and presumably legally* with the city limits under Chapter 11301, the authority after the ouster judgment being *de jure* as to all lands legally in the city limits, and *de facto,* but effectual as to appropriate taxation of the land in the area from which the jurisdiction of the city has been ousted by the quo warranto judgment, which area includes plaintiff's land, such taxation since 1934 being to pay amounts due on the bonds of the city. The quo warranto judgment of ouster was rendered years after the city assumed and exercised jurisdiction over all the territory described in Chapter 11301, and after the bonds had been validated and sold and the proceeds thereof used in the authorized municipal improvements made in the city, some of such improvements being in the area in which plaintiff's land is located.

This conclusion is not intended to affect, and does not affect, the quo warranto judgment of ouster, relating as it does to the *de jure* jurisdiction of the City of Winter Haven over the stated added area; but the conclusion is that, under the facts shown, the original *prima facie* and presumptively *de jure* jurisdiction and ultimate *de facto* jurisdiction of the City of Winter Haven over the land affected by the judgment of ouster and the exercise of such jurisdiction and authority before the ouster judgment, gives the city legal authority to levy and collect appropriate and just taxes upon plaintiff's land since the judgment of ouster, to pay its proper share of the legal bond obligations of the city. The tax levies made before the ouster judgment ap-

parently were for operating expenses as well as for paying bonds issued by the city. A further discussion with citations of authority might not be inappropriate.

. The right to establish a municipality does not exist in individuals but is conferred by the State through statutes that accord with organic law. Robinson v. Jones, 14 Fla. 256. The Constitution provides for the establishment of municipalities under authority given by general laws and by statutes dealing with particular municipalities. Sec. 24, Art. III; Sec. 8, Art. VIII. Under Section 24, Article III, the general statutes provide that a municipality may be established by the "inhabitants of any hamlet, village or town in this State," not less than twenty-five in number, by complying with the requirements of the statute. When duly established and organized, the municipality has stated powers, authority, duties and privileges conferred by the general statutes regulating the establishment, powers, jurisdiction and privileges of such self-established municipalities. Secs. 2935 (1825), *et seq.*, C. G. L., copied or referred to in the statement preceding this opinion.

The *inhabitants* of a community in establishing a town under the statute have *no authority* to incorporate in the same municipality two distinct detached tracts of land; and an attempt to do so is void. Town of Enterprise v. State, 29 Fla. 128, 10 So. 740; Mahood v. State, 101 Fla. 1254, 133 So. 90. A *statute* may incorporate into a municipality two separate and non-contiguous lands. Lane v. State, 63 Fla. 220, 57 So. 662.

Under Section 8, Article VIII, Constitution, quoted in the statement, except as modified by Section 6, Article IX, as amended in 1930, as to issuing governmental bonds," the Legislature shall have power to establish and to abolish municipalities, to provide for their government, to prescribe their jurisdiction and powers." Hayes v. Walker, 54 Fla.

163, 44 So. 474; State v. Tampa Water Works, 56 Fla. 858, 47 So. 358; 19 L. R. A. (N. S.) 183; MacGuyer v. Tampa, 89 Fla. 138, 103 So. 418; Lake Alfred v. Lawless, 102 Fla. 84, 135 So. 895; Lane v. State, 63 Fla. 220, 57 So. 662; State v. Avon Park, 108 Fla. 641, 149 So. 409. See Sec. 6, Art. IX, as amended in 1930; Jacksonville v. Renfroe, 102 Fla. 512, 136 Sou. 254.

As a basis for the establishment of a municipality by or under statutory authority, there must be in existence a community of people and a territory they occupy of sufficient but not patently excessive and unsuited area for the inhabitants to have such human contacts as to create a community of public interest and duty requiring, in consideration of the general welfare, an organized governmental agency for the management of their local affairs of a *quasi* public nature. State v. Town of Lake Placid, 109 Fla. 419, 147 So. 468.

The power to establish a municipality may not lawfully be so exercised as to be an abuse of power or authority to incorporate an area where there is no resident population or where the population is so small and disproportionate to an enormously excessive area included in the boundaries, when the patently and grossly excessive area is not suitable for municipal purposes, and cannot be benefited by the municipality or its public facilities or improvements, and cannot be needed for a reasonably expected growth of the municipality or the needs of the municipality. State v. Sarasota, 92 Fla. 563, 109 So. 473; State v. Stuart, 97 Fla. 69, 120 So. 335, 64 A. L. R. 1307; State v. Avon Park, 108 Fla. 641, 149 So. 409; State v. Lake Placid, 109 Fla. 419, 147 So. 468; State v. Pompano, 113 Fla. 246, 151 So. 485; State v. Fort Lauderdale, 102 Fla. 1019, 136 So. 889; State v. Homestead, 100 Fla. 361, 130 So. 28; State v. Largo,

110 Fla. 21, 149 So. 420; Olds v. State, 101 Fla. 218, 133 So. 641.

The Constitution commands that when a municipality is abolished, provision shall be made for the protection of its creditors. State v. Goodgame, 91 Fla. 871, 108 So. 836; Humphreys v. State, 108 Fla. 92, 145 So. 858; San Mateo v. State, 116 Fla. 546, 158 So. 112; State v. Peacock, 112 Fla. 671, 151 So. 4. The principle of the above organic command contemplates that where lands are withdrawn from a municipality, such land shall continue to be liable to taxation for the debts of the town or city unless the creditors are otherwise fully protected. See Humphreys v. State, 108 Fla. 92, 145 So. 858; State v. Miami, 101 Fla. 272, 134 So. 608.

A statute incorporating lands into à municipality is not *ipso facto* or even *prima facie* unconstitutional on the ground that some of the lands may be adjudged to be un-suited for municipal purposes, or that some of the lands cannot be benefited by such incorporation; for such matters are within the legislative judgment, unless by due course of law a violation of a provision of the Constitution is ad-judged; and such adjudication ordinarily has to be made upon evidence *aliunde* the statute. A statute not patently unconstitutional on its face is *prima facie* and presumptively valid, and rights acquired *bona fide* under such a statute are property rights protected by the State and Federal Constitutions.

As Section 16, Article III, of the Constitution, which rendered invalid the portion of Chapter 11301 because of the defective title of the Act, operated upon the form or manner of the enactment and did not negative the *power* of the Legislature to include lands in the city limits, the statute being invalid on its face, was *prima facie* and pre-sumptively valid in its entirety, and so remained until the

quo warranto judgment ousted the city from its *prima facie de jure* jurisdiction conferred by Chapter 11301 over the above stated added area. But such ouster did not deprive the city of its *de facto* jurisdiction and authority, which (consistently with the Constitution and statutes of the State and without affecting the ouster judgment) the law raises to protect and enforce organic rights lawfully acquired pursuant to the exercise by the city of the *prima facie* and presumptively valid jurisdiction and authority conferred upon the city by Chapter 11301.

Some of the provisions of the State Constitution relate to and control the form and manner of enacting statutes; e.g., Sections 16, 17, Article III; some provisions relate to and control the *power* of the Legislature to enact *stated* subjects of legislation; e.g., Sections 5 and 6, Article IX; Section 30, Article III; and other provisions contain commands or prohibitions addressed to the Legislature or to other departments of the government, or to all; e.g., Section 7, Article IX; Section 23, Article III. The enacting clause prescribed by Section 15, Article III, is a prime essential to the validity of a law. *In re* Advisory Opinion, 43 Fla. 305, 31 So. 348.

Statutes that are not patently and indubitably void or unconstitutional on their face are *prima facie* and presumptively valid and constitutional; and they so remain, subject to be duly adjudicated to be in whole or in part in conflict with express or implied provisions of the paramount law or to be otherwise inoperative in whole or in part. This rule is particularly applicable where the illegality alleged is the legal insufficiency of the title to express the subject embraced in the body of the Act, since the Legislature has wide latitude in selecting and expressing subjects of legislation, and the courts do not adjudge a title to a legislative enactment to be in violation of Section 16,

Article III, unless the title is misleading and such violation appears beyond any doubt, so as to make it the duty of the courts to sustain the Constitution when a statute indubiably conflicts therewith. See Hiers v. Mitchell, 95 Fla. 345, 116 So. 81; State v. Hand, 96 Fla. 799, 119 So. 376. The public had a right to presume that Chapter 11301 was valid as an entirety.

Section 16, Article III, of the Constitution is mandatory in its provisions; and a legislative enactment which violates this section is invalid *ab initio*. The section does not relate to a specific subject of legislation, as does Section 17, Article XII, nor does it relate to *subjects* that shall not be included in the statute, as does Section 6, Article IX, and Section 30, Article III; but it relates to the *form* and manner of expressing the subjects of the enactments in the titles of the Acts. If the organic invalidity is patent upon the face of the enactment, or if it violates a command or prohibition of the Constitution *affecting the nature* of the subject matter and not merely the *form* or manner of the enactment, it is, *ipso facto,* void, and no rights may be acquired under it. Nuveen v. City of Quincy, 115 Fla. 510, 156 So. 153, 37 L. R. A. 1298. If the enactment relates to municipal jurisdiction that the Legislature has power to confer, and it is not unconstitutional on its face, but may be duly adjudged to be unconstitutional by appropriate allegations and evidence *aliunde* the enactment, and if it is adjudged to be unconstitutional, it is so *ab initio;* but if rights are duly and *bona fide* acquired under the enactment before it is adjudged to be unconstitutional; there may in law be a *de facto* municipal jurisdiction that is recognized and utilized by the courts in protecting and enforcing organic rights duly acquired before the illegality of the enactment is adjudged. State, *ex rel.,* v. City of Cedar Keys, 122 Fla. 454, 165 So. 672; City of Winter Haven v. Gillespie, 84

Fed. (2d) 285; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361.

In this case the invalidity *of a portion* of Chapter 11301, Acts of 1925, is because of the insufficiency of the title of the Act to include a portion of the lands attempted to be embraced in Chapter 11301, which invalidity is as to the form and manner of the enactment, and did not go to the power of the Legislature to incorporate land; and such invalidity did not appear on the face of the statute, and had to be shown by evidence; and because of the action taken under the *prima facie* and presumptively valid statute, the doctrine of *de facto* jurisdiction of the municipality over the lands not legally but in fact in the municipality by statutory description, is properly applied under the State and Federal decisions establishing the doctrine of *de facto* jurisdiction of municipalities established *by statutes*. See cases last above cited. In Wade v. Atlantic Lumber Co., 51 Fla. 628, 41 So. 72, and like cases, the doctrine of *de facto* municipal jurisdiction could not be applied.

Section 16, Article III, does not relate to particular subjects of legislation as do Section 7, Article IX, and Section 17, Article XII; but like Sections 15 and 17, Article III, Section 16 is applicable to every legislative enactment. Ordinarily and generally when a statute violates Section 16, Article III, it appears by a consideration of the face of the statute with the organic section, as in Car v. Thomas, 18 Fla. 736; Wade v. Atlantic Lumber Co., 51 Fla. 628, 638, 41 So. 72; Pebble Phosphate Co. v. Silverman, 80 Fla. 541, 86 So. 508; State v. Palmes, 23 Fla. 620, 3 So. 171; Webster v. Powell, 36 Fla. 703, 18 So. 441; *Ex Parte* Knight, 52 Fla. 144, 41 So. 786; *Ex Parte* Gilletti, 70 Fla. 442, 70 So. 446.

In this case a part of Chapter 11301 violates the first clause of Section 16, Article III, in that the description of

the boundaries of the City of Winter Haven as contained in Chapter 11301, does not show on its face that it embraces more area than that which was theretofore in the city plus the added area that had been included in the abolished Town of Florence Villa, which two latter areas alone were covered by the title. That an area not theretofore incorporated was added to the city limits by the contents of Chapter 11301 but not covered by the title of the Act, was shown by evidence *aliunde* Chapter 11301, in the quo warranto proceedings and a judgment was rendered ousting the city from jurisdiction and authority over the added area. The statutory descriptions of the area theretofore included in the City of Winter Haven and the boundaries of the Town of Florence Villa had to be examined before it appeared that Chapter 11301 contained descriptions of land not covered by the title of the Act, viz.: description of areas that had not been in the city or in Florence Villa.

When a question is duly presented as to whether a portion of a statute is embraced in the subject expressed in the title of the statute, or as to whether it is matter properly connected with the subject expressed in the title of the statute, the question is to be determined as a matter of law; but *prima facie* and presumptively such portion is sufficiently covered by the title of the Act, at least unless it is patently obvious that it is not, which affords notice to everyone; and if such portion of the statute does not appear by the face of the statute, considered with the Constitution, to be not covered by the title of the Act within the intent and meaning of Section 16, Article III, of the Constitution, it must be shown by evidence *aliunde* in appropriate judicial proceedings, as was done in State v. City of Winter Haven, 114 Fla. 199, 154 So. 700. In the Nuveen and Weinberger cases, the unconstitutionality of the

statute appeared on the face of the law considered with the Constitution.

In such cases whether the controverted portion of a statute is, or is not, sufficiently covered by the title of the statute, as required by the State Constitution, is a matter for State, and not for Federal, jurisdiction. See Chicago, etc., R. R. v. Risty, 276 U. S. 567, 48 Sup. Ct. 396, 72 L. Ed. 703; Forsyth v. Hammond, 166 U. S. 506, 17 Sup. Ct. 665, 41 L. Ed. 1095.

In the North Miami case, 58 Sup. Ct. Rep. 385, ...... L. Ed. ......, the *general statutes* gave the inhabitants of the community authority to incorporate land, *but not non-contiguous land*. In attempting to incorporate non-contiguous lands, the inhabitants did not merely defectively exercise their authority, but they assumed to exercise an authority not given them, viz.: to incorporate *non-contiguous* lands. Town of Enterprise v. State, 29 Fla. 128, 10 So. 740.

In this case *the Constitution* gave the Legislature authority to incorporate lands whether contiguous or not; but the Legislature must exercise its authority by statute enacted as required by Section 16, Article III, of the Constitution. Chapter 11301 incorporated lands as authorized by Section 8, Article VIII, Constitution, but some of the lands so incorporated were not embraced in the title of the Act. This was a defective exercise of the power conferred *by Section 8, Article VIII, of the Constitution;* but the *statute* did not assume to include lands it had no authority to incorporate.

Thus in the North Miami case, *supra,* there was no authority to incorporate *non-contiguous* lands; while in this case the *statute,* Chapter 11301, was a defective exercise by the Legislature of its power to incorporate all the lands,

·by not making the title sufficiently comprehensive to include a part of the lands described in the body of the Act. There was no *statutory* validation or incorporation in the North Miami case, as in Schultz v. State, 80 Fla. 564, 86 So. 428. See also State v. Eddy, 95 Fla. 978, 117 So. 377. In this case there was a *statutory* incorporation of lands; and the defect in incorporating *a part* of the land did not go to the power to incorporate the land, but to the form of the enactment; and the defect did not appear on the face of the statute, but had to be shown *aliunde* in the quo warranto proceedings.

Even if the portion of the lands included in Chapter 11301 were of such a nature and so situated that the city could have been ousted of jurisdiction of them on that ground, that did not appear by the statute, and would have to be shown *aliunde*. If the area had been excluded by statute after the land had become subject to taxation to pay bonds, the statute so excluding the land would be void as violating the obligation of the bond contracts, even if the jurisdiction of the municipality over the land be merely *de facto;* and there can be *de facto* municipal jurisdiction over lands that are defectively incorporated *by a statute not void on its face,* though there can be no *de facto* jurisdiction over *non-contiguous* lands attempted to be incorporated by *inhabitants* under the general statutes which do not give *inhabitants* authority to incorporate *non-contiguous* land, and no statute has incorporated or authorized the incorporation of non-contiguous lands by the inhabitants, or otherwise, as may be in accord with organic law. State v. Rodes, 115 Fla. 259, 151 So. 289, 155 So. 852.

The doctrines of *de jure* and of *de facto* municipal jurisdiction and powers, and of *de jure* and *de facto* officers and of *de jure* and *de facto* corporations existed in this State when the present Constitution of Florida was adopted.

Such doctrines are not inconsistent with the Constitution and statutes of the State, and they have been recognized and applied in proper cases. If there is a *prima facie* and presumptively valid statutory *de jure* municipality or if there is *prima facie* and presumptive municipal jurisdiction or authority over an added area to the boundaries of a municipality, there may be *de facto* municipal existence or jurisdiction. See West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361. But if there is no authority for conferring *de jure* municipal jurisdiction or authority, there can be no *de facto* jurisdiction or power. Ocean Beach Heights v. Brown-Crummer Inv. Co., 58 Sup. Ct. 385, 82 L. Ed. ___; Town of Enterprise v. State, 29 Fla. 128, 10 So. 740.

Likewise if there is no office and no authority to create an office, there can be no *de facto* officer. But if the Legislature has authority to create an office and by statute defectively exercises the authority, or if there is no officer holding *de jure,* there may be a *de facto* officer under color of authority. Norton v. Shelby, 118 U. S. 425, 6 Sup. Ct. 1121, 30 L. Ed. 178; State v. Gleason, 12 Fla. 190, 233; State v. Sawyer, 94 Fla. 60, 113 So. 736. There can be no *de facto* corporation unless a *de jure* corporation could have been created by or pursuant to a valid statute, or unless it is attempted to be created in substantial compliance with legal authority for creating a *de jure* corporation. Duke v. Taylor, 37 Fla. 64, 19 So. 172, 53 Am. St. Rpts. 232, 31 L. R. A. 484; Booske v. Gulf Ice. Co., 24 Fla. 550; 5 So. 247.

The *de facto* jurisdiction and authority of a municipality are recognized by the law as a means of protecting and enforcing rights *bona fide* acquired under a *prima facie* and presumptively valid statute, or under authority conferred by statute where the authority conferred, or attempted to be conferred, could have been conferred and is exercised in

good faith and within the authority that could legally have been, and was attempted to be, conferred.

In this case:

(1) There was a valid general law, viz.: Section 8, Article VIII, Constitution, under which Chapter 11301 could have added the stated area to the city limits;

(2) There was a legislative attempt in Chapter 11301 to add the area to the city limits;

(3) There has been actual uses of the jurisdiction attempted to be conferred by Chapter 11301, and rights have been acquired thereunder.

See Tulare Irrigation Dist. v. Shepard, 185 U. S. 1; 13, 22 S. Ct. 531, 46 L. Ed. 773.

In Duke v. Taylor, 37 Fla. 64, 19 So. 172, 53 Am. St. Rep. 232, 31 L. R. A. 484, the corporate power could have been acquired under the statute, but no *bona fide* attempt was made to pursue the State statute under which the corporate authority could have obtained.

The provision of Section 5, Article IX, of the Constitution, that "the cities and incorporated towns shall make their own assessments for municipal purposes upon the property within their limits," does not forbid municipal taxation of land that was by statute included in the limits of a municipality, though the jurisdiction and authority of the municipality be ousted from the land, where rights had been acquired predicated upon *de facto* power to tax the land before the municipal jurisdiction and authority over the land was ousted. If lands are excluded from the municipality by statute after organic rights had been acquired, it would violate the obligation of contracts, contrary to the State and Federal Constitutions. State v. Town of Holly Hill, 128 Fla. 385, 174 So. 818. If the ouster of municipal jurisdiction and authority over an area

in the statutory city limits be by judicial judgment after such rights had accrued, it would be the deprivation of property rights without due process of law, if the lands do not remain subject to appropriate taxation. See State v. City of Cedar Keys, 122 Fla. 454, 165 So. 672.

Though the taxpayer plaintiff does not challenge the validity of the bonds for the payment of which his land is taxed, the authority to issue the bonds and to levy tax for authorized municipal purposes should and does appear.

The statute limits the amount of bonds to ten per cent. of the value of the property in the city and required the annual levy of a tax necessary to pay the bonds for duly authorized municipal purposes. This complies with Sections 3 and 5 of Article IX of the Constitution; and there is no unlimited or unlawful delegation of the sovereign power of taxation to the municipality. There is no suggestion that Section 6, Article IX, Constitution, as amended in 1930, was not complied with after its adoption.

Where, pursuant to valid statutory authority, negotiable bonds to be paid by taxation are duly issued and sold *bona fide* by a *de jure* municipality to obtain funds for authorized municipal public improvement purposes, such negotiable bonds are binding contract obligations of the municipality to be paid by taxation as provided by law upon all the taxable property within the municipality at the time the bonds are issued and sold, unless otherwise provided in the law or proceedings authorizing the bonds to be issued. Humphreys v. State, 108 Fla. 92, 145 So. 858; State, *ex rel.,* v. Lehman, 100 Fla. 1113, 131 So. 533.

This rule of the contract obligations of such duly issued municipal bonds is applicable to taxable lands that were in the limits of a *de jure* municipality when the bonds were issued, but which were subsequently excluded by statute.

Such lands, though excluded from the municipality, remain subject to the right of the municipality exerting *de facto* jurisdiction and of the right of *bona fide* holders of the negotiable bonds, to have the lands legally and appropriately taxed as authorized by law, in common with the lands remaining in the municipality, to pay the bonds under the law in force and applicable when the bonds were issued. State v. Town of Holly Hill, 128 Fla. 385, 174 So. 818. The same rule applies when the municipality had only *de facto* existence and jurisdiction over the lands. State, *ex rel.*, v. City of Cedar Key, 122 Fla. 454, 165 So. 672; Henderson v. Town of Lake Placid, filed January 8, 1938; City of Winter Haven v. Gillespie, 84 Fed. (2d) 285; State, *ex rel.*, v. Walthall, 124 Fla. 866, 169 So. 552; State, *ex rel.*, v. Walthall, 125 Fla. 423, 170 So. 115; West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361; Speer v. Board, 88 Fed. 749, 32 C. C. A. 101; Clapp v. Otie County, 104 Fed. 473, 145 C. C. A. 579.

A like rule applies when it is attempted by statute or constitutional amendment to exempt lands from taxation resulting in a violation of the organic commands that no law shall be passed violating the obligation of contracts. Sec. 17, Declaration of Rights, Florida Constitution; Sec. 1, Art. 10, Federal Constitution; Boatright v. City of Jacksonville, 117 Fla. 477, 158 So. 52; Gray v. Moss, 115 Fla. 701, 156 So. 262; State v. City of Pensacola, 123 Fla. 441, 166 So. 851.

The City of Winter Haven is a legally existing municipality. The city exercised the municipal authority conferred by Chapter 11299 over all the territory described in Chapter 11301, as being within the City boundaries. Duly authorized municipal bonds, to be paid by taxation of all taxable property in the city, were issued, validated, sold and used for authorized municipal public improvements, some

of which improvements were made in the area which embraces plaintiff's land. Afterwards, by quo warranto judgment, the city was ousted of authority over an area including plaintiff's land. Upon the principles stated and the authorities cited herein, the holding in this case is that the City of Winter Haven had and continues to have *de facto* jurisdiction and authority to appropriately tax plaintiff's land along with other lands described in Chapter 11301 to pay operating expenses of the city before the rendition of the judgment of ouster and also to pay the bonds, and that the decrees appealed from should be severally reversed, and the cause remanded for further appropriate proceedings by due course of law..

Reversed and remanded.

ELLIS, C. J., and TERRELL, BROWN, BUFORD, and CHAPMAN, J. J. concur.

### ON PETITION FOR REHEARING

PER CURIAM.—In a petition for rehearing it is suggested, among other matters, that in the quo warranto case, State, *ex rel.,* v. City of Winter Haven, 114 Fla. 199, 154 So. 700, the court held that the title to Chapter 11301, Acts of 1925, was misleading and contained nothing to apprise the Legislature or the public that other lands than those included in the old city of Winter Haven and the adjacent former Town of Florence Villa were being included within the boundaries of the City of Winter Haven; and that it therefore appears the Legislature "did not intend to include the excluded lands, nor was the public, including bondholders, misled by the inclusion thereof."

As shown by the body of Chapter 11301, the Legislature did manifest an intent to include in the boundaries of the City of Winter Haven the area in which plaintiff's land

is located; and that legislative intent would be the law, if the Legislature had not violated Section 16, Article III, of the Constitution, by making the title of the Act too restrictive to express the entire subject of the Act. The restrictive title rendered invalid the portion of the body of the Act which is not covered by the subject expressed in the title. Such partial invalidity does not go to the power of the Legislature to include the land in the city, but to the contents of the title as used in expressing the subject of the Act by which the power of the Legislature is exercised.

Section 16, Article III, of the Constitution, does not forbid or limit particular subjects of legislation, as do other organic sections, but commands that "each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title," etc.

In enacting laws every legislative bill has a title which is designed to indicate the subject that is embraced in the proposed law; and the quoted organic command requires the title to briefly express the subject of the pending enactment so that the nature of the subject of the Act may be truly indicated by reading the title. See State, *ex rel.,* v. Green, 36 Fla. 154, 18 So. 334.

Chapter 11301, Acts of 1925, in the body of the Act, amends Chapter 11299, Acts of 1925, by adding to the area of the City of Winter Haven under the latter Act, the area of the abolished Town of Florence Villa and other lands not theretofore incorporated. The Act was in its entirety *prima facie* and presumptively a valid enactment. This status of the statute remained until in quo warranto proceedings a portion of the Act adding lands to the city boundaries was shown *aliunde* and adjudged to have been illegally included in the statute under its restrictive title.

The body of Chapter 11301, Acts of 1925, amending Chapter 11299, so as to add areas to the city boundaries, ·contained descriptions of lands designed to be added to the boundaries to the City of Winter Haven under a title which casually considered apparently covered the lands described in Chapter 11301 amending Chapter 1299, as being. the area of the city. Evidence *aliunde* Chapter 11301 was required to show the title of the Act was too restricted to cover all the lands described in the Act as being the boundaries of the city. This was not merely "color of law" as to the boundaries of the city under the Act, but the Act was *prima facie and presumptively a valid enactment* in its entirety, and the city exercised *de. facto* jurisdiction over the res pursuant to Chapter 11301.

In the quo warranto case (State, *ex rel.,* v. City of Winter Haven, 114 Fla. 199, 154 So. 700) this court affirmed the judgment of partial ouster after finding upon a showing *aliunde* that the title to Chapter 11301 was too restrictive to express the entire subject embraced in the body of the Act. It was not determined whether any of the lands illegally included in the city limits by Chapter 11301 could legally be subject to municipal jurisdiction because of their location or character. Questions as to the exercise of *de facto* jurisdiction and the consequences thereof, were not determined by this court in that action and the judgment as affirmed is not *res adjudicata* except as to the adjudged insufficiency of .the title of Chapter 11301 to embrace the added area which includes plaintiff's land.

The quo warranto judgment ousted .the *de jure* city from further exercising the *asserted de jure* jurisdiction over the area including plaintiff's land, *under Chapter 11301;* .but it did not relieve the city of its legal obligations incurred under the statutes; nor destroy legal rights acquired under the law, while the city was exercising *de facto* jurisdiction

over the land under a *prima facie and presumptively valid* inclusion of the stated area in the described boundaries of the city contained in Chapter 11301. See State, *ex rel.,* v. City of Cedar Keys, 122 Fla. 454, 165 So. 672; Speer v. Board, 88 Fed. 749, 32 C. C. A. 101; Clapp v. Otie County, 104 Fed. 473, 45 C. C. A. 579.

Validating decrees adjudicate the validity of proposed issues of municipal bonds; but whether lands over which a *de jure* city exercises *de facto* jurisdiction when negotiable municipal bonds are issued, are subject to taxation to pay the bonds, is to be determined by appropriate judicial procedure. If the lands were and are of such a nature and so located as to make their taxation for municipal purposes violate property rights secured by organic law, or if under the dominant law the lands are not subject to municipal taxation, that may be duly adjudicated in appropriate proceedings in which questions of the powers of the municipality as well as of waiver of estoppel of the land owners may be presented for determination.

In this case it is held that illegal taxes may be enjoined. Plaintiff seeks to have enjoined the collection of municipal taxes alleged to be illegally assessed against its property, and relies upon a ground which this court holds to be unavailing under the law. This is not a denial of due process of equal protection. If plaintiff has a right to relief that is not waived or barred, it may be litigated.

Under Chapter 11299, Acts of 1925, the city in this case is a *de jure,* nor merely a *de facto,* municipality. In the quo warranto proceedings the asserted *de jure* jurisdiction of the city over certain lands under Chapter 11301, was challenged and the city authorities were ousted from jurisdiction over the particular lands. This did not determine rights and obligations flowing from the exercise by the *de jure* city of *de facto* jurisdiction over the lands which

were by a presumably valid enactment included in the city limits, even though such jurisdiction of the city over the lands, was, because of a defect in the title of Chapter 11301, ousted by a judgment in quo warranto, such judgment of ouster having been rendered after the city had issued negotiable bonds for authorized municipal purposes and pledged the taxing power of the city over all the lands in its limits to pay the bonds.

The *de facto* jurisdiction of the city over the *res* is not "predicated solely upon validation of the bonds," as shown by the opinion of the court.

The judgment of ouster was affirmed not because the stated area was not a proper subject of legislation in the statute, but because the title of the Act did not indicate that the particular area was in fact included in the boundaries described in the Act.

Plaintiff is not by the decision in this case, denied equal protection or due process of law or deprived of the substantial fruits of the litigation in the quo warranto proceedings in which plaintiff was a corelator, since the quo warranto judgment did not adjudicate the rights and obligations flowing from the exercise of *de facto* jurisdiction by a *de jure* municipality. Some of such matters are here being litigated.

The quo warranto judgment was rendered after the bonds of the city were vaildated by judicial decrees and the legal inclusion of the *res* in the city limits could not be litigated or determined in the validating proceedings which related to the validity of the bonds, and not to whether lands were illegally included in the Act amending the city charter. It does not appear that the record in the validating proceedings showed any invalidity in the inclusion of lands in the city limits or that the bonds were not legally issued.

Between the effective date of Chapter 11301 and the date of the quo warranto judgment ousting the city authorities from jurisdiction over the area adjudged to have been illegally included in the city limits the City of Winter Haven, being a *de jure* municipality under Chapter 11299, had unquestioned *de jure* jurisdiction over all the area described in Chapter 11301, except the separate area which includes plaintiff's land. And until the judgment of ouster, the city also had and exercised actual and *prima facie de jure* jurisdiction over the latter area predicated upon a presumptively valid statutory inclusion of such area in the boundaries of the city as described in Chapter 11301.

The Legislature had the power, under Section 8, Article VIII, of the Constitution, to include in the city limits all of the lands described in Chapter 11301. But the defective exercise of such power by the Legislature in enacting the statute without complying with the Constitution as to the manner and form of expressing the subject of the law in the title of the enactment, caused a portion of the described area to be illegally included in the city. Yet the city, being a *de jure* municipality, was presumptively justified in exercising jurisdiction over such area in the manner provided by law. Such exercise of jurisdiction by the *de jure* city was *de facto* and presumptively *de jure;* and the rights and obligations flowing from the exercise of such *de facto* jurisdiction were not involved in the quo warranto proceedings, and the judgment therein did not affect any rights or obligations arising from such exercise of *de facto* jurisdiction. After the quo warranto judgment of partial ouster, the rights lawfully acquired under the pre-existing *de facto* and *prima facie de jure* jurisdiction of the city over the lands in the illegally added area, may be enforced under the doctrine of *de facto* jurisdiction of municipalities and their correlative rights and obligations. No contract rights

are thereby violated, and the due process of law clause is not violated. The citizens and taxpayers had notice of the exercise by the city of the *de facto* jurisdiction over the area; and the citizens and taxpayers are bound by the judicial decrees validating the bonds as provided by statute. The commands of the Constitution that all men shall have rights of "acquiring, possessing and protecting property," and that no person shall be deprived of life, liberty or property without due process of law," "nor shall private property be taken without just compensation," should be made effective in proper cases.

A *de jure* municipality cannot issue negotiable bonds for authorized municipal purposes, by the exercise of *de facto* jurisdiction, and refuse to compensate therefor without violating organic law, where the bonds are authorized by statute and are not issued in violation of a command or prohibition of the Constitution affecting the authority to issue the bonds or the terms or purposes thereof.

All parties are bound by the quo warranto judgment; but such judgment did not adjudicate the rights and obligations litigated in this case, which result from the exercise by a *de jure* municipality of *de facto* jurisdiction over lands that were under a presumptively valid statute incorporated in the municipal limits at the time when municipal bonds were issued for authorized municipal purposes, for the payment of which bonds the taxing power of the city over all the lands in the city was pledged. The particular lands were included in the city limits by statutory enactment when the municipal bonds were issued, validated and used for duly authorized municipal purposes. All of the citizens or taxpayers of the city were by the statute made parties to the bond validating proceedings, and the decrees therein are by the terms of the statute binding on all.

If under Section 8, Article VIII, of the Constitution, a statute embraces in the boundaries of a municipality land that cannot be taxed for municipal purposes without violating some provision or principle of organic law, that matter may be determined in appropriate judicial proceedings, so that "by due course of law" "right and justice shall be administered" by the "courts in this State." Sec. 4, Declaration of Rights. See State, ex rel., v. City of Avon Park, 108 Fla. 641, 149 So. 409; State, ex rel., v. Town of Lake Placid, 109 Fla. 419, 147 So. 468. Such matters cannot be determined in bond validating proceedings. See West v. Town of Lake Placid, 97 Fla. 127, 120 So. 361.

It does not clearly appear that the city is enforcing taxes for operating expenses on lands from which the jurisdiction of the city has been ousted by the quo warranto judgment.

Rehearing denied.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.