McCOMBS et al. v. WEST et al.

No. 131.

District Court, S. D. Florida, Orlando Division.

Oct. 26, 1945.

D. C. Hull, of DeLand, Fla., for plaintiffs.

W. H. Poe, Joe Scott Kirton, and Charles O. Andrews, Jr., all of Orlando, Fla., for defendants.

BARKER, District Judge.

This suit seeks a judgment declaring rights between the defendants herein and a third party, to-wit: City of Ocoee, Fla. Plaintiffs are bondholders or owners of judgments on bonds issued by said City.

My predecessor has decided certain preliminary questions herein. viz.: (1) That the City of Ocoee is not an indispensable party; (2) that the complaint presents a justiciable controversy such as to authorize a declaratory judgment. These I have followed as being the settled law of the case with respect to those questions.

· Answers have been filed and some of the defendants have filed motions for a summary judgment upon the pleadings as they now stand, and the other defendants have announced that they also join in said motions.

The City of Ocoee was incorporated by a Special Act of the Legislature of Florida in the year 1925. Sp.Acts Fla., 1925, c. 10951. Its territorial boundaries were fixed by the Legislature in the Act of incorporation. Said Act authorizes the issuance of the bonds hereinafter mentioned, and provides that the City shall have the right to levy and collect taxes and that suits to foreclose liens for taxes on real property "shall be brought in the Circuit Court of Orange County, Florida."

The City then issued various sets of bonds, most of which bond issues were validated in statutory bond validation proceedings in the State circuit court.

At the time all of said bonds were made, executed and delivered there was a statute

on the statute books of Florida which provided as follows:

"When any incorporated town (or city) containing less than one hundred and fifty qualified electors shall, owing to extent of territory, have embraced within the limits any lands which may from distance or other cause be virtually or commensurately excluded from the benefits of such municipal organization, it is lawful for any owners of such lands or three-fourths of them desiring to have the same excluded from such corporation limits and jurisdiction, to apply by petition to the circuit court in and for the county in which said incorporated town is situated, setting forth in said petition the limits of such incorporated town as then existing and the grounds of his or their objection to be included within the limits of such corporation; whereupon the circuit court shall order notice of said application to be served upon the mayor of said town or city and appoint a day for the hearing of such application.

"If upon the hearing of said application the said court shall sustain the said objection, the said tract or tracts of land shall be excluded. Such petition may be heard and determined by said court in term time or vacation, and any question of fact may be determined by said court without a jury." F.S.A. § 171.02.

"Whenever any portion of any city or town is excluded as aforesaid, such portion and the citizens thereof shall be thereby forever released from all debts, duties, or liabilities of the said city or town; * * *." F.S.A. § 171.03.

On the 24th day of June, 1929, certain property owners instituted suits in the Circuit Court of Orange County, Florida, under said Exclusion Act. Thereafter similar suits were begun by other property owners from time to time. In each of said suits judgments were entered by the said State Court excluding the property of the defendants.

In the first two of the said exclusion actions writs of error were obtained by the City and said judgments were affirmed by the Supreme Court of Florida. City of Ocoee v. West et al., 102 Fla. 277, 130 So. 9; City of Ocoee v. Beggs et al., 102 Fla. 275, 135 So. 557. No writ of error was taken in either of the three remaining exclusion suits; the judgment in the last suit became final on the 18th day of September, 1931.

Suits were instituted in this Court upon certain of the matured bonds and interest coupons, which were reduced to judgment and thereafter this Court issued writs of mandamus, requiring the City and its officials to levy taxes upon all properties incorporated in the city limits by the Legislature, including that described in the judgments of exclusion, for the payment of said judgments. Also the owners of one of said judgments in an equity suit in this Court procured an injunction enjoining the City from failing to tax the excluded property for the payment of the judgment. The holders of the Federal Court judgments were not made parties to the State Court suits excluding the property of the present defendants; the owners of the excluded property were not made parties to the bond judgments entered by the Federal Court, nor to the writs of mandamus issued by this Court nor were they made parties to said Federal Equity suit.

A little more than ten years after the last exclusion judgment became final, plaintiffs acquired by assignments the judgment on bonds and coupons and also acquired other bonds and coupons involved herein.

The principal prayer of the plaintiffs in this suit is that this Court declare the said exclusion judgments to be inoperative to relieve the properties excluded from taxation from plaintiffs' judgment and from the payment of the bonds and interest coupons issued by the City where such properties were within the corporate limits when said bonds were issued; and to enjoin the defendants, property owners, from interposing said exclusion judgments as a defense to the levy and collection of taxes. The grounds alleged for such action are:

1st. That the exclusion statute and the exclusion judgments, if held binding on plaintiffs, impair the obligation of their contracts because the obligation of each bond was to produce annually a tax upon all property which was taxable when the bonds were issued until the entire principal and interest is paid.

2nd. That if the Florida exclusion statute is valid and applicable so as to exclude property that was in the City when the bonds were issued, then the plaintiffs are entitled to be heard upon two questions involved in such proceedings, viz.:

(a) Were there less than one hundred and fifty qualified electors in the City when said exclusion suits were instituted?

(b) Was the property virtually or commensurately excluded from the benefits of the municipal organization when said exclusion suits were filed?

 The Supreme Court of Florida has settled ground No. 1 against plaintiffs herein in the case of Durham, Mayor, et al. v. Pentucket Groves, Inc., 138 Fla. 386, 189 So. 428.

The law is also stated in 12 Am. Jur. 14, as follows: "Conformably to the well established rule that the·laws which subsist at the time and place of making a contract enter into, and form a part of it, as if they were expressly referred to, or incorporated in its terms, the obligation of a contract is measured by the standard of the laws in force at the time it was entered into, and its performance is to be regulated by the terms and rules which they prescribe."

This suit is a collateral attack upon the five exclusion judgments rendered in the State Court. There is no allegation of fraud or collusion in obtaining said judgments. It appears that the plaintiffs seek to have the judgments rendered void and of no effect for lack of jurisdiction of the State Court, because, they say, that there were one hundred and fifty or more qualified electors in the City of Ocoee and therefore the State Court did not have jurisdiction of the petitions.

However, in the City of Ocoee v. West et al., supra, 102 Fla. 277, 130 So. 9, 11, the Supreme Court of Florida, after discussing the first five assignments of error, which were based upon the action of the lower court in ruling upon evidence as to the number of qualified electors in the City of Ocoee at the time of the filing of the petition, said: "We have examined the record and find the Court could have come to no other conclusion than that reached, which was that there were only 149 qualified electors in the city of Ocoee at the time of the filing of the petition"; and in the case of the City of Ocoee v. Beggs et al., supra, 102 Fla. 275, 135 So. 557, 558, the Supreme Court of Florida said: "This case is a companion case to that of City of Ocoee v. West et al., * * * reported in [102 Fla. 277], 130 So. 9 [supra], except that in the instant case the defendants in error maintained in the court below that only those persons were qualified electors within the city of Ocoee who being otherwise qualified had registered subsequent to November 13,

1925, which contention was upheld and sustained by the trial court." and held, "that there was no error committed by the court in holding that persons not having registered in the city of Ocoee in conformity with the terms of the act were not qualified electors of the city at the time the petition was filed."

 In the situation where the jurisdiction is actually contested, the law is stated to be (34 C.J. 552): "Where a court of general jurisdiction judicially considers and adjudicates the question of its jurisdiction, and decides that the facts exist which are necessary to give it jurisdiction of the case, the finding is conclusive and cannot be controverted in a collateral proceeding, unless irreconcilable with facts otherwise disclosed by the record."

The pleadings and exhibits herein reveal that the City, as was its duty, also defended two of said exclusion suits, the first and second in point of time, on the issue of the lands being virtually or commensurately excluded from the benefits of the City, and interposed as a defense to said exclusion suits that the bonds in question were outstanding and unpaid and that it had pledged its power to tax the lands sought to be excluded, along with its other taxable property, for the payment thereof, and that if said lands were excluded its resources would be diminished to such an extent that it would be unable to meet its obligations. These defenses were overruled by the Court on the finding by the Court upon testimony and a view of the lands that said lands were virtually or commensurately excluded from the benefits of the City. See City of Ocoee v. West et al., supra.

To answer questions 2a and 2b it must be determined whether or not the judgments in the state exclusion suits are res judicata and binding on plaintiffs and whether or not they deprive plaintiffs of due process under the United States Constitution. Amend. 14.

 Certainly the statute does not contemplate the joining of creditors of the City, any more than creditors can be made parties to suits against the debtor by a person claiming title to the debtor's assets.

No one has claimed that bondholders have any lien as security for the bonds in question. This is true even as to taxes already levied, for which the City itself

might have a lien. The City has a contract with, and owes a debt to, the bondholders. There is no privity of contract between the bondholders and the property owner.

Emphasizing the total separation of the rights of the bondholders and the property owners, and the lack of contractual or statutory privity between them, is the case of City and County of Dallas Levee Improvement Dist. v. Allen, 5 Cir., 89 F.2d 731.

Enforcement of tax liens that may arise from obedience to the writ of mandamus issued by this Court can only be enforced according to the State law. Meriwether v. Garrett, 102 U.S. 472, 126 L.Ed. 197. The Florida law provides that tax liens on these lands shall be foreclosed only in the chancery court of Orange County, Fla.

The statute in question does not authorize the joining of creditors as parties. The question posed is: the Court appointed by the statute having duly and regularly acquired jurisdiction of the parties described in the statute, and having found the facts necessary to its jurisdiction of the subject matter and to the granting of the relief sought, and rendered a judgment excluding the property from the City, may a bondholder question the correctness of that finding, and say that the statute cannot operate so as to prevent the collection of taxes from the excluded property for the servicing of his bond?

The case decisive of these related questions is that of Kersh Lake Drainage District v. Johnson, 309 U.S. 485, 60 S.Ct. 640, 84 L.Ed. 881, 128 A.L.R. 386. The question of the obligation of contracts and due process of law were both involved in the Kersh case. The Court said (309 U.S. at page 491, 60 S.Ct. at page 644, 84 L.Ed. 881, 128 A.L.R. 386.

"When these certificates were issued purchasers were charged with notice of and bound by Arkansas statutes in existence when, and pursuant to which, the debt was contracted and which provided for determination of the proportionate liabilities of lands in the District by chancery proceedings between the Commissioners and landowners with no requirement of notice to creditors of the District. Thus, the very statutory plan from which the certificate obligations sprang contemplated that the Commissioners should represent the collective and corporate interests of the District, in litigation between the District and a landowner involving matters personal to the landowner.

"These certificate holders were not entitled to be made parties in the Lincoln chancery proceedings just as in practice creditors of a corporation are not, unless otherwise provided by statute, made parties in a suit between a stockholder and the corporation to determine liability on a stock subscription between the corporation and a third person to recover corporate assets, or in a suit brought against the corporation by creditors, stockholders or officers. It has been held that bondholders are not necessary parties to and are bound by the decree—even if adverse to their interests—in litigation wherein an indenture trustee under a bond issue is a party and exercises in good faith and without neglect his contractual authority to represent and assert the lien securing the issue. And so are these petitioners bound by the decrees in the chancery suit in which the Commissioners as parties appropriately asserted the lien for benefit of certificate holders—unless there was fraud or collusion."

The Kersh Lake case was followed in the case of Bloomfield Village Drain Dist. v. Keefe, 6 Cir., 119 F.2d 157, in which bondholders were attempting to establish the validity of bonds issued by certain districts, and that special assessments levied to pay the bonds were valid. The State Courts had held that some of the districts were void, and hence incapable of issuing bonds or levying taxes, in proceedings between the taxpayers and the districts. However, the bondholders claimed, and the District Court had held (prior to the Kersh Lake case) that the judgments of the State Court were not binding on the bondholders who were not parties or represented by counsel, and knew nothing about the cases.

Plaintiffs cite a later case of the Supreme Court of the United States, viz., Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741, but I find this case in harmony with, and in nowise contra to, the holding in the Kersh Lake case.

When we consider what the courts of Florida have held as to the effect of a judgment of exclusion under the statute, we find that the only case that is directly in point is Durham v. Pentucket Groves, 138 Fla. 386, 189 So. 428, 429, supra. That case was decided prior to the Kersh Lake

case. Prior to the Kersh Lake case many courts seemed to think that bondholders must actually be made parties to a case in order to bind them.

The Court, however, gave all of the reasons why they would be bound. Thus, it was said: "Section 3049, Compiled General Laws of 1927 [Section 1916, C.G.S., 1920, F.S.A. § 171.02], was in effect long before the bonds in question were issued. It was prospective in operation and affected only those bond contracts made in the future. Bond purchasers were on knowledge of the statute and cannot complain of its provisions."

As to the effect, it is succinctly stated: "The statute involved here only affects lands that have received no benefits and are without prospect of receiving any by being in the municipality. Under such circumstances the owners may have them released at any time, and when released, they are freed from the obligations of the town. The owners may petition to have them excluded any time the conditions warranting exclusion arise."

Referring to bondholders, the Court said: "The purchaser of bonds of such municipalities takes them burdened with the provisions of the statute, it being a part of his bond contract. He takes nothing from the town when he purchases its bonds but its promise to pay when due. He did not acquire a lien on any of its lands."

The Court then, by way of dicta, said: "If lands were excluded that were not so contemplated by the act, they may, under City of Winter Haven et al. v. [A. M.] Klemm & Son, supra [132 Fla. 334, 181 So. 153], be required to bear their part of the burden but if they were properly excluded, there is no theory under which they can now have the burden imposed on them. In the absence of showing to the contrary, we must assume that they were legally excluded."

The last paragraph would correctly state the law if the creditor was not bound by res judicata, or if such creditor came into court and showed that the judgment was void as to him because of collusion between the town and the taxpayer. In such a case, the town itself would not be able to have the judgment set aside, but it would be opened for a creditor under the decision in the Kersh Lake case.

We cannot suppose that the Supreme Court of Florida meant to say that the judgment in these exclusion suits is sui generis, so that it alone is not res judicata of any issue tendered and decided. The Court surely did not mean that a party who was within the sphere of operation of the judgment and the statute might ignore them at will and relitigate the issue of qualified electors and benefits, except for the same reasons that any other judgment may be collaterally attacked.

The Klemm case (City of Winter Haven v. A. M. Klemm & Son, 132 Fla. 334, 181 So. 153) involved an ouster by quo warranto and is not in point. The Supreme Court of Florida in its opinion on page 165 of 181 So., calls attention to the fact that: "The quo warranto judgment of March 7, 1934, operating, *not upon land, but upon city authorities,* ousted the city of Winter Haven from exercising municipal jurisdiction over the stated added area * * *." (Italicising mine.)

In the Klemm case there was no statute which permitted the property to be excluded, and that provided that when the judgment was entered, the property should not be liable for the debts of the city. In the Klemm case the original judgment of ouster was not predicated upon a judicial finding that there were no municipal benefits, but because the title to the legislative act was defective, which resulted in usurpation of franchises, but under such circumstances that de facto jurisdiction existed to tax for benefits conferred. Here there is a judgment operating upon the lands, binding upon the city and upon plaintiffs, and based upon a judicial finding that there are no municipal benefits. All of the decisions relied upon by plaintiffs are ones involving ouster of municipal jurisdiction over lands by quo warranto proceedings.

The Court having arrived at the foregoing conclusions, such facts that are disputed and are at issue are not material to the Court's decision. The authenticity of exhibits attached to pleadings which prove court records and other documents considered by the Court is not questioned by counsel.

This cause will be dismissed with costs taxed against plaintiffs. Counsel are directed to prepare and present an appropriate order.