MORGAN S. McCORMICK and JOHN MYERS v. EMMA H. BOUNETHEAU, a Widow.

190 So. 882
Division A
Opinion Filed July 25, 1939
Rehearing Denied September 14, 1939

462

*Morton B. Adams,* for Plaintiffs in Error;

*Crawford & May* and *Francis P. Conroy,* for Defendant in Error.

THOMAS, J.—There are no unusual features in the declaration in ejectment and the plea of not guilty presented the issues tried by the judge of the circuit court without a jury, agreeable to stipulation of the parties.

The record title was established by the documentary evidence to be vested in the plaintiff. The defendants relied upon a tax deed issued by the clerk of the circuit court based on a tax certificate of the City of Coral Gables, June 2, 1930. At this point the relative dates of steps leading to the execution of the deed and to final judgment in a quo warranto proceeding. instituted by the Attorney General become quite significant. The certificate was issued to one of the grantors in the chain of title by the City of Coral Gables, January 17, 1933. The information in quo warranto was filed March 7, 1933. The following year, to be

exact April 16, 1934, tax deed was issued, and May 13, 1935, judgment of ouster was entered excluding the identical property from the jurisdiction of the City.

It will, therefore, be seen that when the above defendant's predecessor in title became the owner of the certificate the jurisdiction of the City over the property involved had not been questioned and that the deed was delivered between the filing of the information in the nature of quo warranto and the culmination of that proceeding in a judgment of ouster.

The circuit judge, finding that the plaintiff should recover, rendered his judgment adjudicating fee simple title to be vested in her, awarding her possession and fixing her damages in the sum of $657.

His conclusion of law and findings of fact have proven helpful in our analysis of the pleadings and evidence and they reflect the thorough consideration given by him to the matters in controversy.

The substance of all the objections, except one, by plaintiffs in error to the ruling of the trial court in favor of their adversary is that a judgment of ouster cannot affect rights previously obtained under a city tax certificate.

By this judgment of ouster which, so far as the record discloses, long ago became final and unappealable it was determined that the city had: "since the enactment of said Chapter 10418 in the year 1925, usurped, used, enjoined, exercised and performed, without warrant or authority of law and in *violation of the Constitution of the State of Florida* and of the rights, privileges and immunities of the co-relator, the franchises, functions, privileges, jurisdiction and powers of a municipality in, upon and over the above described lands of the co-relator, to the damage and prejudice of the State of Florida and the people thereof,

and more especially to the damage and prejudice of the co-relator." (Italics ours.)

If then, as decreed by the court, the constitutional rights of the defendant in error had been usurped from the passage of Chapter 10418 incorporating the land in the boundaries of the city, can it be successfully contested that rights obtained by plaintiffs in error through *mesne* conveyances to one of them from a person who purchased a tax certificate because of nonpayment of an assessment by the City on lands included in its territory in violation of the Constitution are so strong that they may withstand attack from the owner of the fee simple title? We think not. See Pierson v. Long, 103 Fla. 383, 137 South. Rep. 232.

As early as the decision (1856) in Brown v. Snell, 6 Fla. 741, this Court declared:

"A purchaser at a tax sale purchases at his peril, and he must see to it that the sale is valid." 6 Fla., text 746.

In the case of Graham v. Florida Land & Mortgage Co., 33 Fla. 356, 14 South. Rep. 796, it was announced that the rule of caveat emptor applies to such purchasers. Quoting Judge Cooley the opinion continues:

" 'He takes all the risk of his purchase, and, if he finds in any case that he has secured neither the title he bid for nor any equitable claim against the owner, the State may, if it sees fit, make reparation itself; but it has no more authority to compel the owner of the land to do so than to exercise the like compulsion against any other person.' " 14 South. Rep. 805.

The money paid by the recipient of the tax certificate found its way into the exchequer of the City. This purchaser then stood in the place of the City which made the assessment on land it had, according to the judgment,

usurped since the year 1925, long before the tax was levied. Applying the rule approved by this Court, relief might be available to the purchaser from some other source but there seems no just reason for the Court to divest the owner of the legal title to his land because of an instrument based on such an infirm foundation.

We are unable to comprehend the relevancy of the cases cited by plaintiffs in error, notably City of Winter Haven v. A. M. Klemm & Son, 132 Fla. 334, 181 South. Rep. 153, dealing with *de facto* existence of municipalities where property has been excluded subsequent to the issuance of general bonds, and believe the doctrine established in those cases has been misunderstood by plaintiffs in error. After commenting on the relative invalidity of statutes which (1) violate a command of the Constitution and are void *ab initio* and (2) are defective because of title, Mr. Justice WHITFIELD wrote that the City of Winter Haven, which fell in the latter Class, because of the facts in that particular case, had authority to collect taxes on the land prima facie in the corporate limits, "the authority after the ouster * * * being *de jure* as to all lands legally in the city limits, and *de facto* * * * as to * * * taxation of the land in the area from which the jurisdiction * * * has been ousted by the quo warranto judgment * * *." 181 South. Rep., text 166.

A close study of the theory of the decision and the facts forming its basis reveals that there is no analogy to the case with which we are dealing. The enactment is void *ab initio* if it violates a command or prohibition express or implied of the Constitution, while if deficient because of form as distinguished from power there may be a de facto jurisdiction to protect organic rights created "before the illegality of enactment is adjudged."

This de facto authority may be said to exist as a creature

of the courts to protect organic rights acquired under a law prima facie valid but adjudged defective after these rights have come into existence.

A fact apparent in the Klemm case, *supra,* is that some of the proceeds from the bonds were used to make improvements in the same area later excluded. So, in fact as well as law, there is considerable dissimilarity between that controversy and this one. Even de facto jurisdiction would not in the circumstances related extend to the property of the taxpayer who did not in some fashion waive his objection or acquiesce in incurring the indebtedness.

Though excerpts of the decision in the case we have cited, City of Winter Haven v. A. M. Klemm & Son, *supra,* may afford some comfort to plaintiffs in error, we feel that considered as a whole a comparison with the instant one will show that the principles discussed bear no relevancy to a determination of the status of the grantee in a tax deed based on a certificate for unpaid taxes assessed on a territory over which the City's jurisdiction was void from the beginning.

The buyer acted at his own risk and he will not be afforded relief by a judgment of a court holding his title to be superior to that of the owner in fee simple at the time of the levy. The rule may upon cursory examination seem harsh but when scrutinized in the light of the facts and the ratio that one year's taxes usually bear to the true value of the object taxes it is obvious that an opposite conclusion would produce greater injustice.

Recapitulating, the grantee in a tax deed founded on a tax certificate evidencing unpaid taxes on land in a municipality which was excluded because the city's dominion over it was void *ab initio* will not be adjudicated the holder of

title paramount to that of the record fee simple owner, because the doctrine of caveat emptor applies to the latter.

As to the fifth and remaining objection presented by plaintiffs in error, our construction of the stipulation appearing in the record apropos the damages suffered by the plaintiff by reason of the loss of use of the property coincides with that of the trial court who held it sufficient to justify a recovery in the sum to which we have referred.

Finding no error was committed by the circuit judge in his conduct of the case or his disposition of it, the judgment is affirmed.

Affirmed.

TERRELL, C. J., and BUFORD, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.

WHITFIELD, J. (concurring).—There is no legal obligation of the owners of lands that were illegally included in a municipality and afterwards legally excluded therefrom, to pay taxes on the lands for municipal governmental operating expenses, after the lands have been legally excluded from the jurisdiction of the municipality by statutory authority or by judicial adjudication. If particular municipal governmental benefits are afforded to unincorporated or excluded lands or to their owners, it may be a subject of contract if not *ultra vires* or illegal.

Nor can a municipality *legally* impose debt service taxation by means of tax collections or by issuing tax sale certificates or tax deeds for non-payment of the tax or otherwise, upon lands that had been illegally included in a municipality and afterwards legally excluded therefrom

after the municipality had incurred contract obligations for public municipal improvements which were or are materially and substantially beneficial to the excluded lands in common with the lands legally included in the municipality, unless and until the municipality is so duly authorized by statute under the organic principle of the last sentence of Section 8, Article VIII of the Florida Constitution or by judicial adjudication of de facto jurisdiction and duly conferred authority of the existing municipality to enforce proportionate taxation of the excluded lands to pay the municipal debt.

But when de facto jurisdiction of an existing *de jure* municipality *is established by judicial adjudication* over lands that were illegally included in a municpality by a prima facie valid statute, such lands have been legally excluded therefrom after the municipality had, while the excluded lands were in the municipality by virtue of a prima facie valid statute, legally issued and sold, and used the proceeds of, bonds for duly authorized public municipal improvements which materially and substantially benefited the excluded lands in common with non-excluded lands of the municipality, the courts may in appropriate proceedings require the existing municipality to exercise de facto jurisdiction to enforce against the excluded lands fairly proportionate taxation to pay the bonds so issued and used, if it is equitable to proportionately enforce the tax which had been duly authorized by statute on all the taxable lands in the municipality when the bonds were issued, to pay the bonds, and the owners of the excluded lands did not in due time resist the illegal inclusion of the taxable lands and the imposition of the tax, but acquiesced therein, so as to create an estoppel against them. See City of Winter Haven v.

Klemm, 132 Fla. 334, 181 So. 153; 133 Fla. 525, 182 So. 841; State v. City of Pompano, 136 Fla. 730, 188 So. 610, 629.