In the Matter of 2609 CORPORATION, a Florida Corporation, Bankrupt.

Bankruptcy No. 75–864–Bk–CF–B.

United States District Court, S. D. Florida.

Aug. 27, 1981.

---

Louis Phillips, Miami, Fla., for trustee.

W. Ray Fortner, Lakeland, Fla., for Tax Collector.

Irving Wolff, Miami, Fla., for debtor.

Thomas J. Kirkland, trustee.

## ORDER ON POLK COUNTY TAX CLAIM

THOMAS C. BRITTON, Bankruptcy Judge.

This Chapter X case was filed on June 25, 1975. Bankruptcy Rule 10–601(a), which became effective on April 28, 1975, imposed an automatic mandatory stay upon the enforcement of all liens affecting the debtor's property, including statutory liens for the payment of taxes.[1]

On September 18, 1975, notice of the pendency of bankruptcy proceedings was duly recorded in the public records of Polk County. Under Florida law, this recordation constitutes constructive notice to all persons with interests in real property in that county. § 28.222(3)(f), Florida Statutes; 23 *Fla.Jur.* Notice and Notices, § 4, n.16; 28 *Fla.Jur.* Records and Recording Acts, § 44; *McCausland v. Davis*, Fla.App.

---

1. The District Court also expressly enjoined all lien and enforcement affecting the debtor's property by its order of July 2, 1975, and the Bankruptcy Court, at the Tax Collector's request, expressly enjoined the sale of tax certificates by order of May 26, 1978. However, since the adoption of B.R. 10–601, such orders are redundant.

1967, 204 So.2d 334, 336.[2] Notwithstanding the stay, the Tax Collector for Polk County, Florida, sold tax certificates on all of the property of the subject debtor.

Under Florida law, the sale of certificates by the tax collector is part of a statutory procedure to enforce the State's lien against the property for non-payment of property taxes. The certificates, if not redeemed by the owner, entitle the purchaser to a statutory conveyance to title to the property. Chapter 197, Florida Statutes.

In the following year, the Tax Collector again sold some certificates on the debtor's property for delinquent 1976 taxes. At the hearing before me, the Tax Collector's explanation for his apparently contumacious conduct was that for many years the Bankruptcy Court for the Middle District of Florida, which includes Polk County, has followed and apparently continues the practice of entering specific orders prohibiting the sale of tax certificates. The Tax Collector concluded that without such specific order, he was duty bound to proceed with lien enforcement. His attorney has offered no basis for this position and, of course, since the adoption of B.R. 10–601, there is no basis for this position. 13A *Collier on Bankruptcy* (14th ed.) ¶ 10–601.03[2]. The 12 Tax Collectors in the Southern District of Florida have experienced no difficulty in complying with the automatic stay imposed by the Bankruptcy Rules of 1975.

If the Tax Collector had followed federal law and had applied for modification of the stay to permit tax collection during the pendency of this case, it is probable that the trustee would have been directed to pay the taxes on a current basis, thus providing current taxes to the public agencies, avoiding loss to the innocent purchasers of certificates and preventing a windfall benefit to the debtor's creditors. I have been assured that this mistake will not occur again.

The Tax Collector also sold tax certificates for 1974 taxes on May 30, 1975, *before* the bankruptcy petition was filed. That sale was unaffected by the bankruptcy proceedings and was in all respects lawful.

For some reason not clear from the record before me, some of the property owned by the debtor according to the public records of Polk County was carried by the Polk Tax Assessor and, therefore, the Polk Tax Collector under the name Roth. Consequently, tax certificates were sold during each of the years in question under the misconception that the affected property was that of a third party and not the debtor. That practice stopped after the sale of 1977 (for 1976 taxes) when the Bankruptcy Court, at the Tax Collector's request, stayed all sales of all Roth certificates.

Because of the Tax Collector's disinclination to apply for modification of the stay, the stay has continued, no certificates have been sold and no taxes have been collected for the years 1977, 1978, 1979 and 1980 although the trustee was billed for taxes in the usual manner. The trustee has presented a plan which substantially protects all of the debtor's creditors including those who were buying property from this bankrupt land developer as well as those who held mortgages on that property. This plan was confirmed on March 2, 1981. The trustee is now in the process of consummating the plan and to do so must straighten out the foregoing tax mess. His application to require the Tax Collector to accept payment for the delinquent taxes and to redeem the certificates he unlawfully sold was heard on August 5. Notice was also given to the seven persons who purchased certificates from the Tax Collector.

■ *1974 Taxes.* As has been said above, I find the sale of certificates for 1974 taxes which took place 26 days before bankrupt-

2. The trustee also, by letter, specifically advised the Tax Collector of the pendency of bankruptcy, the existence of the federal injunction and invited the Tax Collector to apply to the Bankruptcy Court in accordance with the federal law for modification of stay to permit continued tax collection. The Tax Collector acknowledged many of these letters, but continued to disregard the federal injunction.

cy, to be regular in all respects. However, the interest which those certificates earned terminated on June 25, 1975 and subsequent interest and penalties, if any, are discharged in bankruptcy. *Sexton v. Dreyfus*, 219 U.S. 339, 31 S.Ct. 256, 55 L.Ed. 244 (1911); 3A *Collier on Bankruptcy* (14th ed.) @63.16!11, n.5.

The trustee is directed, therefore, to redeem all certificates for 1974 taxes forthwith by the payment of the principal tax, interest to the date of bankruptcy and the service charges imposed by Florida law. The certificate numbers and the sums payable are set forth on the attached schedules. The Tax Collector is directed to accept this payment and upon receipt of that payment, the debtor's property is discharged of any lien or encumbrance on account of 1974 taxes.

I reject the trustee's suggestion that this court order the Tax Collector to redeem these certificates from the purchasers by paying post-petition interest to the certificate holders. That is an issue in which the debtor and, therefore, this court has no appropriate concern. It will no doubt be resolved between those parties. See *McCormick v. Bonnetheau*, 1939, 139 Fla. 461, 190 So. 882, 883.

■ *1975 and 1976 Taxes.* I find the sale of certificates in 1976 and 1977, for 1975 and 1976 taxes, to have been unlawful and, therefore, ineffectual and a nullity insofar as those certificates encumber the debtor's title to its property in Polk County.

The trustee is directed to pay forthwith all taxes due upon the debtor's property for the years 1975 and 1976 together with all service charges imposed by Florida law (but omitting any interest or other charges resulting from the unlawful sale of tax certificates). The certificate numbers or tax bill numbers in question and the sums payable are set forth on the attached schedules A and B. The Tax Collector is directed to accept this payment and upon receipt of that payment, the debtor's property is dis-

charged of any lien or encumbrance on account of 1975 and 1976 taxes.

As has been said with reference to the 1974 taxes, the issues between the Tax Collector and the seven persons who purchased the ineffectual certificates are matters to which this court has no appropriate concern.

■ *1977 through 1980 Taxes.* No certificates were sold with respect to taxes for the year 1977 and following years. However, taxes are delinquent and unpaid through the tax year 1980.

The trustee is directed to pay forthwith all taxes due upon the debtor's property for the years 1977 through 1980 together with all service charges imposed by Florida law. The tax bill numbers and the amounts payable are set forth on the attached schedule. The Tax Collector is directed to accept this sum.

■ *Roth Tax Bills.* As has been said, a part of the debtor's property to which it held title as reflected in the public records of Polk County was, unaccountably, assessed to and therefore billed to a third party, Roth. Some of those bills also included property in fact owned by Roth in which the debtor had no interest. In 1978, this court, at the Tax Collector's suggestion, stayed all further sales of certificates of property billed in the name of Roth. The result is that Roth has received a free ride for three years.

The trustee is directed, therefore, to pay forthwith to the Tax Collector, the prorata share of all taxes due upon the debtor's property (as reflected upon the public records of Polk County) with respect to the tax bills issued in the name of Roth. The ratio with respect to each tax bill and the amount payable are set forth on the attached schedule. That amount is computed in accordance with the principles and formulas set forth above with respect to tax bills correctly issued in the debtor's name.

Burnett Roth and Kenneth Roth are ordered, jointly and severally, to pay forthwith to the Tax Collector the prorata share of all taxes due, together with all interest, service charges and penalties, if any, im-

posed by Florida law, upon property owned by either or both these individuals which was included in a single tax bill with property owned by the debtor. The ratio with respect to each tax bill and the amount payable are set forth on the attached schedule. That amount is computed as though the Roth tax bills had been properly issued to include only Roth property, and not the debtor's property, without any restriction on interest (see § 197.016(1), Florida Statutes) or penalties resulting from bankruptcy. The Tax Collector is directed to accept these payments and upon receipt of both payments, the debtor's property is discharged of any lien or encumbrance on account of unpaid taxes.

■ *Contempt.* This court is presently persuaded to disregard the Tax Collector's contumacious conduct which has been described above. I attribute his failure to follow federal law to the then recent adoption of the Bankruptcy Rules with their then novel imposition of an automatic stay and the redundant practice of the Middle District of continuing to issue specific injunctive orders to State Tax Collectors. However, jurisdiction of the parties is retained and ruling on the issue of contempt is reserved pending complete compliance with the terms of this order.

Costs, if any, will be assessed on motion.