839 So.2d 748 (2003)
Cedric T. GREEN, Appellant,
v.
STATE of Florida, Appellee.
No. 2D02-2430.
District Court of Appeal of Florida, Second District.
January 31, 2003.
Rehearing Denied March 7, 2003.
*749 NORTHCUTT, Judge.
The issue here is whether the legislature, when reenacting the criminal punishments contained in chapter 99-188, Laws of Florida, after it was stricken on constitutional single subject grounds, could require the reenacted punishments to be applied retroactively to the effective date of the earlier law. We hold that it could not.
Cedric Green was adjudicated guilty of violating section 893.135(1)(b)(1)(a), Florida Statutes (1999), by trafficking in more than 28 but less than 200 grams of cocaine. He committed this crime in April 2000. In September 2000, the circuit court sentenced him to 42.9 months' imprisonment, including the three-year minimum mandatory term required under the statute. After Green was sentenced, this court issued Taylor v. State, 818 So.2d 544 (Fla. 2d DCA), review dismissed, 821 So.2d 302 (Fla.2002), declaring chapter 99-188 unconstitutional because it violated the single subject requirement. Section 9 of that chapter had amended section 893.135 to add the minimum mandatory prison term imposed on Green.
The single subject rule provides, in pertinent part, that "[e]very law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title." Art. III, § 6, Fla. Const. Generally, single subject defects are cured prospectively by the legislature's customary biennial reenactment of the offending laws. See Salters v. State, 758 So.2d 667, 671 (Fla.2000). But in 2001 the legislature did not pass a biennial reenactment of the 1999 statutes. See Taylor, 818 So.2d at 550 n. 4. Rather, in 2002 it responded to Taylor by enacting chapters 02-208, 02-209, 02-210, 02-211, and 02-212, Laws of Florida, which separately reenacted the sundry provisions of chapter 99-188. See, e.g., Martinez v. Scanlan, 582 So.2d 1167, 1172 (Fla.1991) (noting *750 that the legislature can cure a single subject violation by separating the disparate provisions into distinct bills and individually reenacting them into law). Significantly, each of these new chapters stated that its provisions "shall be applied retroactively to July 1, 1999, or as soon thereafter as the Constitution of the State of Florida and the Constitution of the United States may permit." Chs. 02-208, § 2 at 1426; 02-209, § 3 at 1429; 02-210, § 3 at 1442; 02-211, § 3 at 1452; 02-212, § 4 at 1499, Laws of Fla. Our research suggests that this was the first time the legislature has undertaken a retroactive reenactment of criminal laws after they were found unconstitutional because of a single subject rule violation.
Against this backdrop, on May 1, 2002, Green filed a motion pursuant to Florida Rule of Criminal Procedure 3.850, asserting that because Taylor had stricken the law that mandated a minimum sentence for his crime, and because he committed the crime during the window period for challenges on that basis, he should be resentenced under the 1997 statutes.[1] Green's argument was amply supported by precedent. Traditionally, when a defendant has been sentenced under a statute that is declared unconstitutional on single subject grounds, he is entitled to be resentenced under the valid law in effect on the date of his offense. See Heggs v. State, 759 So.2d 620, 630-31 (Fla.2000). In Green's case, however, the circuit court noted that the legislature had cured the single subject rule violation by reenacting the various provisions of chapter 99-188 retroactively to July 1, 1999. Accordingly, the circuit court held that Green was not entitled to relief.
Since the circuit court issued its order, other courts have ruled likewise. The Fifth District, in Carlson v. State, 27 Fla. L. Weekly D2162, ___ So.2d ___, 2002 WL 31202145 (Fla. 5th DCA Oct.4, 2002), and Hersey v. State, 831 So.2d 679 (Fla. 5th DCA 2002) (on grant of rehearing), has held that the curative provisions of chapter 02-210[2] apply retroactively. The Fourth District, too, appears to hold this view. In two cases decided without opinions, it has cited Hersey. Nieves v. State, 833 So.2d 190 (Fla. 4th DCA 2002); Green v. State, 832 So.2d 199 (Fla. 4th DCA 2002).
We disagree with those decisions. We hold that chapter 02-212 cannot be applied retroactively, for to do so would violate the Ex Post Facto Clauses of the United States and the Florida Constitutions. U.S. Const. art. 1, § 10; art. I, § 10, Fla. Const.[3] Therefore, we reverse Green's sentence, and we remand with directions to resentence him pursuant to section 893.135(1)(b)(1)(a), Florida Statutes (1997).
For a law to run afoul of the ex post facto prohibition, two elements must coincide: "first, the law `must be retrospective, that is, it must apply to events occurring before its enactment' and second, `it must disadvantage the offender affected by it.'" Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting Weaver v. Graham, *751 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)). It is beyond argument that the retroactivity portion of chapter 02-212 is retrospective. The act also disadvantages Green. But for the retroactivity provision of chapter 02-212, Green would be entitled to resentencing under the valid law in effect on the date of his offense. See Heggs, 759 So.2d at 630-31. By virtue of this court's decision in Taylor, the valid law in effect on the date of Green's crime was section 893.135(1)(b)(1)(a), Florida Statutes (1997). That statute did not prescribe a three-year minimum mandatory prison term for his offense. Thus, Green is disadvantaged by the minimum mandatory term for his crime included in chapter 02-212.
Our analysis does not end there, however. As mentioned, the Fifth District has upheld the retroactivity provision against an ex post facto challenge. That court discerned that its ruling was supported by Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), in which the Supreme Court held that applying the 1972 Florida death penalty statute to crimes committed before its enactment did not violate the Ex Post Facto Clause. Carlson, 27 Fla. L. Weekly at D2162-63, ___ So.2d at___ _ ___. But we are persuaded that the Dobbert reasoning does not apply here.
Dobbert had its genesis in June 1972, when the Supreme Court struck down the Georgia death penalty statute as violative of the Eighth and Fourteenth Amendments to the United States Constitution. Furman v. Georgia, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). In July 1972, the Florida Supreme Court held that Florida's 1971 death penalty statute was inconsistent with Furman. Donaldson v. Sack, 265 So.2d 499 (Fla.1972). Late in 1972, the Florida Legislature enacted a new death penalty statute. Ch. 72-724, Laws of Fla. Dobbert, 432 U.S. at 288, 97 S.Ct. 2290.
Dobbert committed two murders between December 1971 and April 1972, while the 1971 death penalty statute was in effect. He was tried, convicted, and sentenced to death for these crimes sometime after the effective date of the 1972 statute. Id. at 289, 97 S.Ct. 2290. Dobbert raised several ex post facto challenges to his sentence. Pertinent for our purposes is his claim that because the 1971 statute had been declared unconstitutional in Donaldson, no death penalty statute existed at the time of his crimes, and therefore he could not be sentenced to death. The Supreme Court found that the Ex Post Facto Clause did not bar the retroactive application of the 1972 death penalty statute to Dobbert's crimes for two reasons. First, the Court noted that the changes in the death penalty statute between the time of the murder and the time of the trial were procedural and "on the whole ameliorative," and hence there was no ex post facto violation. Id. at 293-94, 97 S.Ct. 2290. Second, the Court observed that the existence of the earlier statute at the time of the murder served as an "operative fact" to warn Dobbert of the penalty Florida would seek to impose on him if he were convicted of first-degree murder. This, the Court wrote, was sufficient compliance with the ex post facto provision of the Constitution, notwithstanding the subsequent invalidation of the statute. Id. at 298, 97 S.Ct. 2290.
The Fifth District founded its decision in Carlson on this second, "operative fact," theory, thus holding that the Florida legislature's enactment of chapter 02-210 applied retroactively to cure a portion of section 893.135(1)(a)(1) that had been declared unconstitutional in Taylor.[4] "The *752 fact that the State ultimately corrected the defect in the legislation to require exactly that which it had invalidly required earlier and then mandated a retroactive application of the amendment does not, according to Dobbert, violate the ex post facto provision of the United States Constitution." 27 Fla. L. Weekly at D2162-63, ___ So.2d at___ _ ___.
In our view, that overbroad characterization of Dobbert actually illustrates a critical distinction between the issue in Dobbert and the one before us: Dobbert did not address the effect of defective legislation. Rather, its observations about the effect of Florida's 1971 death penalty law were in the context of a validly enacted statute that contained unconstitutional provisions. In contrast to Florida's 1971 death penalty statute, chapter 99-188 was not validly enacted. Florida law draws a distinction between laws that are unconstitutional because they were illegally enacted, as in Taylor, and ones that were validly enacted but later found to be unconstitutional, like the death penalty statute in Dobbert. The former are void, while the latter are merely voidable. See B.H. v. State, 645 So.2d 987, 995 (Fla. 1994).
When the enactment of a law fails to comport with constitutional procedural mandates, the law is illegally enacted and is thus void ab initio, as opposed to being merely voidable. B.H., 645 So.2d at 995; see also McCormick v. Bounetheau, 139 Fla. 461, 190 So. 882, 883-84 (1939) (stating that a statute is void ab initio if it violates a constitutional prohibition). One of those mandates is the single subject rule, set forth at article III, section 6. As the Heggs court stated, a law enacted in violation of the single subject rule is "void in its entirety." 759 So.2d at 630.
This distinction between a void law and one that is merely voidable is important to the Dobbert analysis. The Dobbert "operative fact" reasoning is grounded on the notion that the existence of the unconstitutional statute provided notice to the defendant of the penalties that the State would seek to impose upon conviction. "Whether or not the old statute would in the future, withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers." Dobbert, 432 U.S. at 297, 97 S.Ct. 2290. The 1971 Florida death penalty statute was voidable, not void. That is, the legislature properly enacted the law, but it was later found unconstitutional. Cf. B.H., 645 So.2d at 995 (stating the statute challenged there involved a portion of an enactment that was merely voidable for violation of the nondelegation and vagueness doctrines). And, as in B.H., only a portion of the 1971 death penalty statute at issue in Dobbert was declared unconstitutional. Donaldson, 265 So.2d at 502 (stating the portion of section 775.082(1) that permitted sentence of life imprisonment for a capital crime remained in effect).
A voidable statute  one that is validly enacted but achieves an unconstitutional result  might indeed provide notice to a defendant. But we cannot fathom how an unconstitutionally enacted law, which therefore "never ha[d] any actual effect," could serve as an "operative fact" under the Dobbert analysis. See B.H., 645 So.2d at 995; Loxahatchee River Envtl. Control Dist. v. Sch. Bd. of Palm Beach County, 515 So.2d 217, 219 (Fla.1987) (explaining that a statute held unconstitutional on single subject grounds is invalid until such time as it is reenacted and cannot be considered with reference to what has occurred *753 before that reenactment); McCormick, 190 So. at 883-884; City of Winter Haven v. A.M. Klemm & Son, 132 Fla. 334, 181 So. 153 (1938); Messer v. Jackson, 126 Fla. 678, 171 So. 660 (1936).
This is especially so when the law has been enacted in violation of the single subject requirement. That constitutional provision addresses the most basic prerequisite to the exercise of legislative power, i.e., that a law may be enacted only if it is approved by a majority of legislators. See Art. III, § 7, Fla. Const. The single subject rule prevents the subversion of that requirement through "logrolling." State v. Thompson, 750 So.2d 643 (Fla.1999); State v. Johnson, 616 So.2d 1 (Fla.1993); State v. Lee, 356 So.2d 276 (Fla.1978); Taylor, 818 So.2d at 546. When a law violates the single subject clause, it cannot be assumed that a majority of the legislators assented to it. See Colonial Inv. Co. v. Nolan, 100 Fla. 1349, 131 So. 178, 179 (1930). Indeed, the assumption must be to the contrary. As the Florida Supreme Court observed in Heggs, when the legislature passes a bill in violation of the single subject rule,
"[i]t is assumed, without inquiring into the particular facts, that the unrelated subjects were combined in one bill in order to convert several minorities into a majority. The one-subject rule declares that this perversion of majority rule will not be tolerated. The entire act is suspect and so it must all fall."
759 So.2d at 630 (quoting Millard H. Ruud, No Law Shall Embrace More Than One Subject, 42 Minn. L.Rev. 389, 399 (1958)). If, as Heggs held, it is assumed that an act passed in violation of the single subject rule did not truly represent the will of a majority of legislators, certainly such an act does not put anyone on notice of "the degree of punishment which the legislature wished to impose" for a crime. See Dobbert, 432 U.S. at 297, 97 S.Ct. 2290. We note that an Illinois court has come to the same conclusion. In re F.G., 318 Ill. App.3d 709, 252 Ill.Dec. 607, 743 N.E.2d 181 (2000) (holding that when law violating the Illinois single subject rule was void ab initio, it was not an "operative fact" under Dobbert.)
We recognize that our discussion of the efficacy of a law passed in violation of the single subject rule may be at philosophical odds with the majority opinion in Martinez v. Scanlan, 582 So.2d 1167 (Fla.1991). In that case, the Florida Supreme Court unanimously held that chapter 90-201, Laws of Florida, a revision of the workers' compensation laws, was unconstitutional on single subject grounds. But the justices split 4-3 on the question of whether the court could strike the law only as of the date of its decision rather than as of the date the law had been enacted. The majority determined that, based on equitable considerations, the court could make a prospective ruling that a statute was unconstitutional. In so doing, the majority drew a distinction between a law that is unconstitutional due to its form and one that violates a limitation on legislative power, and it apparently assigned single subject violations to the former category. Martinez, 582 So.2d at 1174.
To be sure, the majority decision in Martinez stirred some controversy among the justices. See 582 So.2d at 1176 (Barkett, J., concurring in part and dissenting in part). It also caused some trepidation at the district court of appeal level. See Garcia v. Carmar Structural, Inc./Feisco, 605 So.2d 1288, 1290 (Fla. 1st DCA 1992) (observing that "[i]n principle, we find ourselves in agreement with the dissent in Martinez v. Scanlan"). Obviously, we, too, balk at the proposition that the failure of a law to adhere to the constitutionally prescribed form does not implicate constitutional restrictions on the exercise of legislative power. Established law preceding Martinez was to the contrary. See Messer, *754 171 So. at 662 (holding that bill which passed the senate with one title and the house with another "did not become a law"). And, as demonstrated by the Heggs court's observations about the single subject rule, that prescribed "form" is inextricably connected to the most basic limitation on legislative power, such that its violation creates an assumption that the act was approved by an aggregation of minorities rather than by a true majority. Heggs, 759 So.2d at 630. It is significant, "form vs. power" proposition from a case, McCormick, 190 So. at 883-884, that did not involve a single subject rule violation.[5]
Be that as it may, Martinez might support an argument, at least by implication, that a statute declared unconstitutional for a single subject violation may not be void ab initio, and may have some lingering effect. For this reason, it is important to note two reasons why Martinez has no bearing on the issue before us. First, by its terms, the Martinez decision does not apply to criminal cases. The majority prefaced its discussion of the "form" and "power" distinction with this qualification: "Clearly, a penal statute declared unconstitutional is inoperative from the time of its enactment, not only and simply from the time of the court's decision." 582 So.2d at 1174 (citing Russo v. State, 270 So.2d 428 (Fla. 4th DCA 1972)). Therefore, although the "form" and "power" distinction might have some currency when determining whether equitable circumstances justify making a prospective declaration that a civil statute is unconstitutional, Martinez itself seems to foreclose that possibility in the realm of penal laws.[6]
Second, even in the context of the workers' compensation case before it, the Martinez court did not rule on the issue presented here. Before Martinez was decided, the legislature was alerted to the possibility that chapter 90-201 violated the single subject rule. Therefore, in 1991 it cured the single subject violation by separately reenacting the various provisions of the 1990 law. When doing so, the legislators attempted to give the reenacted provision retroactive effect to the date chapter 90-201 became effective. The Martinez court expressly declined to decide whether such a retroactive reenactment was constitutionally permissible.[7]Id. at 1175.
*755 Therefore, while we acknowledge some inconsistency with the theory espoused by the Martinez majority, that decision does not impede our adherence to the view that chapter 99-188 was void ab initio. As such, it did not exist for any purpose, and specifically was not an "operative fact" as contemplated in Dobbert.
Aside from all of the foregoing, even if Dobbert could be read to permit the retroactive application of chapter 02-212, we still do not believe that Green himself could be sentenced under the version of section 893.135 enacted in that chapter because it did not exist on the date of Green's sentencing. Consider: Dobbert committed his crimes before the enactment of the 1972 death penalty statute, but he was sentenced for the crimes after the effective date of the law. In the Supreme Court he argued that it violated the Equal Protection Clause to treat him differently from the prisoners sentenced to death under the 1971 statute prior to Furman, all of whom had their sentences commuted to life imprisonment. See Donaldson, 265 So.2d at 502. In rejecting this claim, the Dobbert court stated "[h]e was neither tried nor sentenced prior to Furman, as were they, and the only effect of the former statute was to provide sufficient warning of the gravity Florida attached to first-degree murder so as to make the application of this new statute to him consistent with the Ex Post Facto Clause of the United States Constitution." 432 U.S. at 301, 97 S.Ct. 2290 (emphasis supplied).
Note that Dobbert did not hold that the 1972 statute retroactively "revived" the 1971 statute. In fact, the previously quoted language implies the opposite: the only effect of the 1971 statute was to provide notice. Here, Green was sentenced before the effective date of chapter 02-212. If the effect of the unconstitutional 1999 statute was only notice, Green could not be sentenced under it. He also could not be sentenced under the version of section 893.135 enacted in chapter 02-212 because it was not in effect on the date of his sentencing in 2000. In other words, if Dobbert saves the retroactivity clause in chapter 02-212 from the ex post facto prohibition, which we do not believe it does, it can only do so for those sentenced after that law came into existence on April 29, 2002.
For all the reasons stated, Dobbert is inapplicable to this case. The Ex Post Facto Clauses of the Florida and the United States Constitutions prohibit the retroactive application of chapter 02-212, Laws of Fla. See Miller, 482 U.S. at 430, 107 S.Ct. 2446. Because the chapter's retroactivity provision states that it is to be applied as of July 1, 1999, "or as soon thereafter as the Constitution of the State of Florida and the Constitution of the United States may permit[,]" as a technical matter our decision does not require us to hold the provision unconstitutional. Rather, we hold that under the Florida and federal constitutions chapter 02-212 may be applied no earlier than its April 29, 2002 effective date. We certify that this decision conflicts with the Fifth District's decisions in Carlson. 27 Fla. L. Weekly at D2162,___ So.2d at ___, and Hersey, 831 So.2d at 679. See also Lecorn v. State, 832 So.2d 818, 819 (Fla. 5th DCA 2002); Jones v. State, 27 Fla. L. Weekly D2377, ___ So.2d ___, 2002 WL 31431541 (Fla. 5th DCA Nov.1, 2002).[8]
We reverse the circuit court's order denying Green's rule 3.850 motion and remand *756 with directions to resentence him under section 893.135(1)(b)(1)(a), Florida Statutes (1997).
CASANUEVA, J., Concurs specially.
ALTENBERND, J., Concurs specially.
CASANUEVA, Judge, Concurring.
I fully concur with the majority holding that chapter 02-212 cannot be applied retroactively for to do so would violate the Ex Post Facto Clauses of the United States and Florida Constitutions.
To prohibit legislative Acts "contrary to the first principles of the social compact and to every principle of sound legislation," the Framers included provisions they considered to be "perhaps greater securities to liberty and republicanism than any [the Constitution] contains." The provisions declare: "No State shall ... pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligation of Contracts...." U.S. Const., Art. I, § 10.
Carmell v. Texas, 529 U.S. 513, 520-21, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) (footnotes omitted). I now turn to that sound principle prohibiting ex post facto laws.
In Calder v. Bull, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798), Justice Chase, writing for the Court, stated that "ex post facto law" was a technical term derived from the English common law and was well known to the Framers of our national Constitution. Justice Chase cataloged four meanings or applications of the technical term, the third of which is at issue here: "Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." Id. at 391. To fall within this prohibition, two elements must be present: "[F]irst, the law `must be retrospective, that is, it must apply to events occurring before its enactment,' and second, `it must disadvantage the offender affected by it.'" Miller v. Florida, 482 U.S. 423, 430, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (quoting Weaver v. Graham, 450 U.S. 24, 29, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).
Like the majority, I conclude that both elements are present in this case, and I find support for this conclusion in the reasoning of Miller. There, the Court addressed the retroactive application of Florida's sentencing guideline scheme. The Court not only concluded that the retroactive use of the guidelines at Miller's sentencing was unconstitutional but it also rejected an application of Dobbert v. Florida, 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), and found that "Dobbert provides scant support for such a pinched construction of the ex post facto prohibition." Miller, 482 U.S. at 431, 107 S.Ct. 2446. Instead, the Miller Court concluded that
the revised guidelines directly and adversely affect the sentence petitioner receives. Thus, this is not a case where we can conclude, as we did in Dobbert, that "[t]he crime for which the present defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish guilt, all remain unaffected by the subsequent statute."
Id. at 435, 107 S.Ct. 2446 (quoting Dobbert, 432 U.S. at 294, 97 S.Ct. 2290).
Because the rationale of Miller, Weaver, and Calder compel the conclusion that chapter 02-212 renders Mr. Green's punishment for an offense committed before its enactment more onerous in violation of the Ex Post Facto Clause of the United States Constitution, I join the majority's holding.
ALTENBERND, Judge, Concurring.
I fully concur in both Judge Northcutt's well-reasoned and thorough opinion for *757 this court and in Judge Casanueva's additional observations. If a single subject violation by the legislature renders an enactment void, and the supreme court so held in Heggs, 759 So.2d 620, then I cannot conclude that a reenactment of such a criminal statute may be retroactive.
I do not believe that the analysis of a single subject violation and that of a title violation should be clumped together. The notion that a statute is inoperable if its title is inadequate and that the public is entitled to an additional period of time to discover the statute, i.e., until the next biennial reenactment, seems to me to be a good policy. On the other hand, declaring that a single subject violation is always an act of logrolling that renders the enactment void for lack of a majority is, at best, a fiction that appellate courts rely upon because they lack the ability to engage in fact-finding. The notion that an enactment that is void for logrolling can somehow become valid by virtue of the biennial reenactment, which is itself the ultimate example of logrolling, escapes my personal logic.
If the trial courts had been permitted to examine the legislative history behind the enactment of the statutes involved in Heggs and Taylor, I am convinced that they would have concluded beyond a reasonable doubt that the criminal sections of those enactments, which were adequately identified in the title, were fully and unquestionably supported by a majority of legislators. Instead of two unpopular bills being combined to create a single bill with a majority, both of these enactments involved a primary bill that was overwhelmingly popular upon which lesser bills were added like ticks on the back of a rhinoceros. If the supreme court had not rejected the tool of severability in Heggs, the ticks could have been removed from the relevant legislation involved in Heggs and in Taylor. The constitution would have been adequately preserved, and we would have saved the huge judicial expense associated with the resentencing of thousands of prisoners. I believe that the judiciary's experience with Heggs should cause the supreme court to reexamine the wisdom of a general rule prohibiting severability.
NOTES
[1] The window period for asserting challenges based on the unconstitutionality of chapter 99-188 opened on July 1, 1999, see Taylor v. State, 818 So.2d 544, 550 (Fla. 2d DCA 2002), and closed on April 29, 2002, the effective date of chapters 02-208 through 02-212, Laws of Florida.
[2] It appears this should be chapter 02-212, Laws of Florida.
[3] Although all of the mentioned 2002 reenactments contained the same retroactivity provision, our attention must focus on chapter 02-212 because it includes section 893.135(1)(b)(1)(a), the statute under which Green was sentenced. Ch. 02-212, § 1 at 1455, Laws of Fla.
[4] It is not clear from the opinion in Carlson v. State, 27 Fla. L. Weekly D2162, ___ So.2d ___, 2002 WL 31202145 (Fla. 5th DCA Oct.4, 2002), exactly when Carlson's crime was committed or when he was sentenced.
[5] In fact, the court in McCormick v. Bounetheau, 139 Fla. 461, 190 So. 882, 883-84 (1939), merely summarized a theory stated in City of Winter Haven v. A.M. Klemm & Son, 132 Fla. 334, 181 So. 153, 165-66 (1938):

The enactment is void ab initio if it violates a command or prohibition express or implied of the Constitution, while if deficient because of form as distinguished from power there may be a de facto jurisdiction to protect organic rights created "before the illegality of enactment is adjudged."
Although Klemm did involve a statute declared unconstitutional on single subject grounds, that case is, at best, confusing. We doubt whether it has any applicability beyond its specific facts, which concern the jurisdiction and powers of a municipality to tax landowners. Moreover, Klemm muddies the waters by remarking, on the one hand, that the single subject rule is a matter of form, but later stating that "[the single subject provision of the Florida] Constitution, is mandatory in its provisions; and a legislative enactment which violates this section is invalid ab initio." 181 So. at 165, 168.
[6] All of the cases discussed in Martinez v. Scanlan, 582 So.2d 1167, 1174-75 (Fla.1991), in support of the majority's conclusion that the decision could be applied prospectively were civil cases, and most addressed property rights or taxation.
[7] By declining to address that question, the court avoided confronting the serious policy issues that were posed by the legislature's attempt to cure the single subject violation retroactively. We believe approving that practice would eviscerate the single subject rule. At best, the practice would cause uncertainty in the law; any decision that invalidates a statute on single subject grounds would leave the parties in limbo, unable to discern  or predict  what law governs their rights.
[8] We may also be in conflict with the Fourth District's decisions in Nieves v. State, 833 So.2d 190 (Fla. 4th DCA 2002); and Green v. State, 832 So.2d 199 (Fla. 4th DCA 2002).